## Comp *versus* The Carlisle Deposit Bank.

1. Under the charter of a bank the directors were authorized to manage its affairs and appoint its cashier. The bank was in the habit of receiving deposits of bonds for safe keeping for the convenience of its depositors and others, but without any compensation. The cashier of the bank solicited the plaintiff to deposit his bonds in the bank, and he took from the cashier a receipt which stipulated that the bonds should be at the owner's risk. The cashier had no authority to solicit deposits, or make any representations as to their safe keeping, nor was it shown that the bank authorities had any knowledge of this particular deposit. In a suit for the bonds which were lost or stolen, *Held*, that parol evidence of the declarations of the cashier, made when soliciting the deposit, that the bank would as securely keep the plaintiff's bonds as it would its own, and that they were safe, except in case of fire or burglary, was not sufficient to change the effect of the written receipt so as to affect the bank.

2. The bank was in the habit of detaching the coupons and collecting the interest for depositors of these bonds. It sent these coupons to city banks, and the proceeds were there placed to the credit of the bank, and upon the fund thus accumulated it would draw drafts and charge a small commission therefor. The interest paid by the city banks was inconsiderable, and the amount realized therefrom and the commissions on drafts did not compensate for the trouble of forwarding the coupons and paying out the interest. *Held*, that these facts did not constitute the bank a bailee for hire.

3. The bonds thus deposited were placed in a fire-proof safe where the bank kept its own valuable securities, and no one but the cashier and the authorities of the bank had access thereto. The cashier was a man who was highly respected by the community, and had the entire confidence of the directors. *Held*, that there was no evidence of such negligence on the part of the bank as to make it liable for a loss through the dishonesty of the cashier.

May 13th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Cumberland county:* Of May Term 1880, No. 55.

Assumpsit by Samuel Comp against the Carlisle Deposit Bank, to recover the value of certain United States bonds left with the bank for safe keeping, and which were lost while in its custody.

At the trial it appeared that the bank was in the habit of receiving the bonds of depositors and others for safe keeping, but that it never took any compensation therefor. The bonds thus received were placed in tin boxes, and were kept in a burglar-proof safe inside of a larger safe, and the latter was placed in the bank vault. The money of the bank was kept in the same burglar-proof safe. It was usually locked, and no one had access thereto but the cashier or authorities of the bank. It was the habit of the bank to pay the interest directly to the depositors of the various bonds. The cashier cut off the coupons, and as they became due they would

be sent to New York and Philadelphia, to several banks in said cities, and the fund realized from the sale of the coupons was placed to the credit of the defendant bank, which fund the latter used by drawing drafts thereon, and charging the drawees a small commission therefor. It was of some advantage to have such a fund to draw on for the accommodation of its customers, but the balances thus kept in the cities were not large, and very little interest was received thereon. The indirect profit thus derived from the fund did not compensate the bank for the trouble and risk it incurred in forwarding the coupons for collection, and distributing the proceeds among the bond depositors. By the charter of the bank the directors had the power to manage the affairs of the bank and appoint its cashier. From 1865 to 1876, one Hassler was cashier. He was well known and regarded by the community as an honest and upright man.

On January 28th 1868, Hassler sent to the Secretary of the Treasury, at Washington, nine letters, which contained $27,250 of June 7-30 bonds, and gave the number and letter of each bond and the name of the person on whose account the bonds were forwarded, together with the number and denomination of 5-20 July 1867 coupon bonds, to be sent in exchange for them. The authorities of the bank had no knowledge of this transaction, and there was no trace of the bonds on their books except the copies of the above letters in the letter book. On February 8th 1868, the 5-20 bonds were issued in exchange for the 7-30 notes, and on February 10th 1868, they were delivered to the Adams Express Company to be forwarded to the Carlisle Deposit Bank. They were received in Carlisle on February 14th 1868, and were receipted for by Hassler.

On the 15th of February 1868, Samuel Comp, the plaintiff, went to the bank, in which he was a depositor, and drew out his deposit. He had with him $2200 in 7-30 United States bonds. Whilst in the bank he asked Hassler, the cashier, if the bank exchanged 5-20 for 7-30 bonds, and was informed that they did. In answer to the inquiry of Hassler as to whether he had any 7-30's, Comp said that he had, and at Hassler's request showed them to him. Hassler said he would exchange the bonds for him, and went to the safe of the bank and brought out 5-20 bonds of a larger denomination, two of $1000 and two of $100 each. Comp said he wanted bonds of the same denomination as the 7-30's, to wit, four $500 and two $100, as he might want to use them. Hassler then returned to the safe and brought out bonds of the denomination requested (some of those received the day before from Washington), and put them in an envelope and handed them across the counter to Comp, who started to leave the bank. Hassler called him back and asked him what he was going to do with the bonds. Comp replied that he was going to take them home and

deposit them in the Bloomfield bank. Hassler said that they could take care of them just as well, and invited Comp around the counter to look at the vault. Comp then consented to leave the bonds, and Hassler then drew up and handed him the following receipt:

### CARLISLE DEPOSIT BANK.

Carlisle, Pa., February 15th 1868.

Received of SAMUEL COMP, Esq.:

For deposit in the vault of this bank at the risk of the depositor, the following bonds, packages, &c., to be ·delivered on return of this ticket.

NEW BLOOMFIELD PERRY CO., PA.

| 1 U. S. 5.20 bond | . 145289 | . | . | . | . | . $100 |
|---|---|---|---|---|---|---|
| 1 do do | . 145288 | . | . | . | . | . 100 |
| 1 do do | . 78359 | . | . | . | . | . 500 |
| 1 do do | . 78358 | . | . | . | . | . 500 |
| 1 do do | . 78360 | . | . | . | . | . 500 |
| 1 do do | . 78359 | . | . | . | . | . 500 |

$2200

J. P. HASSLER, Cashier.

Interest due July and January.

Comp testified: " He handed the receipt over to me; I looked at it, and told him I wouldn't stand that, that I would take the bonds. I told him if I had to run the risk of the bonds, that I would want the care of them myself. He then picked up the receipt; he said you stand no risk without burglars break in and rob the bank, or fire should take place and burn up the bank. He said the bank took as good care of their depositors' money as they did of their own. He asked me inside of the counter, and I went in and he took me back to the vault, or the safe, and he showed me any amount of envelopes, which he said were all that kind of deposits, and then he said that I had better leave the bonds as a deposit there. His insisting on me, and through his importunity, I agreed that he might keep them. He then folded up the bonds, put them back in the envelope, and handed me the receipt."

There was no evidence of any authority given to ·Hassler to seek deposits or make any representations as to their safe keeping. There were no entries on the books of the bank to show that these transactions were a part of its business operations. The government redeemed the 5.20 bonds of 1867 in 1870, but,the interest on plaintiff's bonds,was paid to him regularly every six'months, until January 1877. The payments were made either by the cashier's or the teller's check on the bank, all of which were honored. The

amount of these checks was charged on the books of the bank. The teller of the bank, who signed some of the checks, was Louis A. Smith, who was also a man of repute and highly esteemed in the community.   Smith died suddenly in September 1876, and Hassler then acknowledged that he had been using the funds of the bank, and by conspiring with Smith, had made fraudulent entries on the books of the bank.   Hassler was dismissed, and afterwards prosecuted for embezzlement, when he committed suicide. In January 1877, Comp went to the bank to collect his interest, and was informed by the new cashier that the bank had no such bonds.   Plaintiff then produced his receipt. and another search was made, but the bonds could not be found.   Hassler, who was then alive, was questioned in regard to them; but he said if they were not in the envelope in the safe, he could not tell what had become of them.   The plaintiff then brought this suit.

Early in May 1877, in a corner of the vault under a large pile of books seldom used, and between the lowest books in the pile was found the original envelope of Mr. Comp.   It contained the two $100 bonds with coupons on for July 1st 1876.

These were tendered to and accepted by plaintiff.

The following were among the points of plaintiff, to which are appended the answers of the court :—

1. If the jury believe that the officers of the bank were in the habit of receiving government and other bonds, for safe keeping, with the knowledge of the directors, and the plaintiff, Comp, left the bonds in question with the bank for safe keeping at the special instance and request of the cashier, and upon his solicitation, and the officers of the bank were grossly negligent, in the care taken of said bonds, the plaintiff may recover the value thereof, together with interest thereon from January 1877.

Ans.  " There being no evidence in the case that the cashier had any authority to make such special request and solicitation as is embraced in this point, and in view of the peculiar circumstances of the deposit in this case, the point is not affirmed."

2. If the plaintiff purchased the bonds from the bank or its cashier, and at the time of purchase told the cashier that he intended to place them for safe keeping in the bank of Bloomfield, Perry county, where the plaintiff resided, and the cashier requested and solicited him to leave the bonds with the bank for safe keeping, stating that the bank would be responsible for the bonds unless in case of burglary of the bank or fire, and relying on these representations, he was induced to leave the bonds with the bank for safe keeping, and they were not lost either by burglary or fire, under these circumstances the plaintiff may recover.

Ans.  " Any such special engagement on the part of the cashier, as is set out in this point, being, according to the evidence, unau-

thorized by the bank, and not within the scope of the lawful powers of the cashier, this point is therefore not affirmed."

3. It being admitted that the bank was in the habit of receiving bonds for safe keeping, and proved that its officers received the same with the knowledge and consent of the directors, if the jury believe the plaintiff left his bonds for safe keeping with the bank at the request and solicitation of its cashier, who stated that the bank would not be liable for the loss of the bonds, and then the plaintiff said he would not stand that, that he would take the bonds home, that if he had to run the risk of the bonds, he would take care of them himself, and the cashier then said you stand no risk without burglars break in and rob the bank, or fire should burn up the bank, such declarations made at the time of the transaction by the agent are binding upon the corporation, and if the loss of the bonds was not caused by burglary or fire, and the bonds were left for safe keeping upon the faith of the declarations made by the cashier as aforesaid, the bank is bound by the contract of its agent, and the plaintiff would be entitled to recover.

Ans. "The answers given to the plaintiff's first and second points are the answer to this point."

4. If the jury believe that the bonds in controversy were left with the bank for safe keeping on the 15th of February 1868, and were purchased by the United States government in October 1870, and the loss of the bonds was not made known to the plaintiff until January 1877, a period of over six years, during all of which time the bank continued to pay the coupons and premium, these are facts for the consideration of the jury in determining the question of gross negligence.

Ans. "There being no evidence showing knowledge on the part of the directors or any officers of the bank, except Hassler, the cashier, and Smith, the teller, of or concerning those four lost or stolen bonds in their use, proper or improper, this point is not affirmed."

5. If the bank received the bonds in question with the understanding that they were to collect the coupons in Philadelphia for plaintiff, and did collect them and thus obtained credit in city banks, upon which they sold checks and drafts at a premium, the bank would not be a bailee without compensation, but if it solicited the deposit for its own special accommodation, it would be responsible for ordinary neglect, and if the jury so believe, they should find for the plaintiff.

Ans. "Under the evidence in this case, this point is not affirmed."

6. If the jury believe that the defendant did not take the same care of the plaintiff's bonds as it did of its own, then the defendant is guilty of such negligence as will entitle the plaintiff to recover.

[Comp *v.* Carlisle Deposit Bank.]

Ans. "If the jury finds that the four missing bonds were lawfully purchased by the plaintiff from Hassler, the cashier, on the 15th of February 1868, and were deposited according to the practice of the defendant corporation, it was not bound to take the same care of them as it did of its own."

7. An incorporated bank has a president, cashier and board of directors, and the cashier is the executive officer to manage its concerns in all things not peculiarly committed to the directors by the charter, and he is the agent of the corporation and not of the directors, and if the jury believe that the contract was made as testified to by Mr. Comp, the defendant is bound by the contract of the cashier, and the plaintiff is entitled to recover.

Ans. "This point is not applicable to the facts of this case or to the issue trying. The first part of this point is offered as a general proposition, but under the charter of the defendant corporation and the facts of the case, is not applicable. The defendant is bound by a contract of the cashier under the practice of the bank."

8. If Hassler, the cashier, spontaneously and officiously proposed that the bank would keep the bonds of plaintiff, the defendant is responsible in such case for ordinary neglect.

Ans. "Any such spontaneous and officious act of the cashier being unauthorized by the bank, it is not responsible for ordinary neglect."

The following were among the points of the defendant with the answers of the court:

1. The bonds in this case having been left in the bank without any consideration for their keeping, the defendant is only liable for such gross negligence as led directly to their loss.

Ans. "Affirmed."

2. No solicitation by Hassler to Mr. Comp to leave his bonds in the bank, in the absence of all evidence showing any authority to Hassler to make any such solicitation, and in the absence of all evidence of any custom so to do known to and acquiesced in by the directors of the bank, will suffice to alter or change the terms of the receipt accepted and produced by the plaintiff, which must be taken as the contract of the party.

Ans. "Affirmed."

3. The fact of the coupons of bonds left with the bank as the plaintiff's were being cut off and sent to the city, sold, and the proceeds of sale, along with other funds passed to the credit of the bank, as a fund for drawing drafts on, does not and cannot imply any consideration for keeping the bonds, especially in the absence of any evidence to show any such understanding or request at the time they were left with Hassler, the cashier, and in the absence of proof that the plaintiff's coupons were so used.

Ans. "Affirmed."

5. The uncontradicted evidence in this case being that the bonds of the plaintiff never belonged to the bank, that they never entered into its working, and they were kept where the bank kept its money and valuables, repels any presumption of such gross negligence as to render the defendant liable for the plaintiff's bonds.

Ans. "If the jury find that the four missing bonds never belonged to the bank, but were the lawful property of the plaintiff, and never entered into the working of the bank, and that they were kept where the bank kept its money and valuables, this would repel any presumption of such gross negligence as to render the defendant liable for such bonds, but the measure of the care is slight diligence."

8. There being no evidence in the cause to show gross negligence on the part of the officers of the bank, and the uncontradicted testimony being that Hassler was of high standing in the community until the discovery of his fraudulent conduct, and that he had the confidence of the community as well as of the directors of the bank, and the evidence being sufficient to justify his conviction for the theft of these bonds, the verdict of the jury should be for the defendant.

Ans. "Affirmed."

In the general charge, the court, McClean, P. J., of the Forty-second judicial district, inter alia, charged:

"The first inquiry of fact to be determined by you is, who had the ownership of the bonds that Mr. Hassler professed to sell or exchange in the transaction with Mr. Comp on the 15th of February 1868. But the day before Mr. Hassler had received them, the same bonds, as appears from the records of the Treasury Department, procured in the lot sent for in nine separate orders of and for private parties, men and women, whose records you have heard read. Were they the property of the bank? Were they the property of Mr. Hassler, the cashier? It is argued that his solicitude and importunity in having Mr. Comp leave the bonds in the bank, is some evidence of a dishonest and fraudulent design on the part of Mr. Hassler in dealing with Mr. Comp in the transaction; that Mr. Hassler had not the right to offer and to appear to pass them to Mr. Comp, if they were the special property of some of the private customers of the bank. The argument of the defendant further is, that the four $500 bonds may have been restored to the parties rightfully owning them, and that Mr. Hassler appropriated to himself the 7-30 notes which the plaintiff passed to him. And that the subsequent acts and conduct of Mr. Hassler in sending the plaintiff the semi-annual returns of the coupons and gold premium after the four bonds had passed back into the treasury of the United States, and were redeemed as far back as the 20th of October 1870, are convincing evidence of the fraud practised by him on Mr. Comp as well as upon

the bank, and that Smith, the teller, was cognizant of and partici-
pated in this guilty conduct. * * *

[" I must instruct you then, at the threshold of the case, that if
you find the bargain of February 15th 1868, tainted with fraud on
the part of Mr. Hassler in disposing of property not his own, nor
the bank's, it is a vicious thing, upon which the defendant cannot
be held liable.    You need not proceed to make the next inquiry in
the case if the first is determined by you against the plaintiff.    It
is a question of fact, and the testimony would seem to be strong in
support of the defendant's position upon this stage of the case, but
the inquiry is to be answered by you from the evidence, and you
must not be controlled by any opinion I have expressed or may
express upon the facts.] * * * [To conclude, if you find from the
evidence that the transaction of the 15th of February 1868, was
a fraud and trick on the part of Hassler, that he had not then
the lawful control of the four missing bonds; but that his act
was a sham and deception, your verdict will be for the defendant."]

Verdict for defendant, and after judgment thereon, plaintiff took
this writ, and alleged that the court erred in the answers to the
above points, and in the foregoing portions of the charge included
in brackets.

*H. Newsham, W. A. Sponsler* and *Graham & Son,* for plain-
tiff in error.—A bank is liable for the acts and declarations of its
cashier when made in the discharge of an act the cashier is au-
thorized to perform, although he may exceed the limit of his express
authority : Lancaster Bank *v.* Irvine, 3 P. & W. 250 ; Chestnut
Hill Turnpike Co. *v.* Rutter, 4 S. & R. 11; Steamboat Co. *v.*
McCutcheon, 1 Harris 15; Pennsylvania Railroad Co. *v.* Titus-
ville Plank Road Co., 21 P. F. Smith 355; Bissell *v.* First Nat.
Bank of Franklin, 19 Id. 419 ; First Nat. Bank *v.* Graham, 4
Norris 91, and 8 W. N. C. 361 ; Gray *v.* Portland Bank, 3 Mass.
385; Merchants' Nat. Bank *v.* State Bank, 10 Wallace 645.

Parol evidence was admissible to vary the written contract:
Thompson *v.* White, 1 Dall. 447 ; Irwin *v.* Shoemaker, 8 W. & S.
75; Overton *v.* Tracy, 14 S. & R. 311; Hultz *v.* Wright, 16 Id.
345; Oliver *v.* Oliver & Bell, 4 Rawle 141; Campbell *v.* Mc-
Clenahan, 6 S. & R. 172; Hoeveler *v.* Mugele, 16 P. F. Smith
350 ; Kostinbader *v.* Peters, 30 Id. 438 ; Graver *v.* Scott, Id. 88;
Chalfant *v.* Williams, 11 Casey 212 ; Mundorf *v.* Wickersham, 13
P. F. Smith 87; Caley *v.* Philadelphia and Chester Railroad Co.,
2 W. N. C. 313; Lippincott *v.* Whitman, 2 Norris 244 ; Greena-
walt *v.* Kohne, 4 Id. 369 ; Eilenberger *v.* Mutual Ins. Co., 8 Id.
464 ; Spencer *v.* Colt, Ibid. 314.

If the use of the coupons resulted in any appreciable advantage
to the bank, it was a bailee for hire and liable for ordinary negli-
gence : Bank *v.* Graham, 29 P. F. Smith 116.    The spontaneous

and officious proposal of the cashier of the bank to keep the bonds made the bank liable : Kent's Com. 564 : Jones on Bailment 54. The cashier cut off and collected the coupons and placed the proceeds to the credit of the plaintiff. The bonds, therefore, entered into the legitimate and proper business of the institution. The proceeds were drawn out upon the cashier's or teller's check in favor of Comp.

*John Hays* and *Lemuel Todd*, for defendant in error.—Admitting that the cashier was the agent of the bank, and he was not, when he gave the printed receipt with the official heading of the bank to Comp, who read it and fully understood it, that receipt, coming as it did from the bank, was notice to Comp upon what terms bonds could be deposited in the vault. It advised him of the power of the person with whom he dealt. He had knowledge of the power committed to the agent with whom he was dealing, and if he trusted to declarations directly contradicting the terms of the paper, the bank is not responsible. The limitation of liability could not extend to cover the gross negligence of the bailee.

By the terms of the charter, the cashier was the agent of the directors and not of the corporation, and the qualifications in Bissell *v.* First National Bank of Franklin, *supra*, destroy the application of that case to the one at bar.

The acts of the cashier were not within the scope of his authority and therefore not binding on the bank : Wharton on Agency, sect. 460 ; Maul and Wife *v.* Rider, 9 P. F. Smith 167 ; Speer *v.* Evans, 11 Wright 141 ; Insurance Co. *v.* Robinson, 6 P. F. Smith 256 ; Butcher *v.* Yocum, 11 Id. 168 ; Fehley *v.* Barr, 16 Id. 196.

His declarations, if intended to make a different contract from that contained in the receipt, were clearly beyond his power, and certainly inadmissible to vary its terms. The deposit and the consequent use of the coupons were too inconsiderable a source of profit to make the bank a bailee for hire. There was no evidence of gross negligence. The esteem in which Hassler was held by the community justified the confidence reposed in him.

The judgment of the Supreme Court was entered May 24th 1880,

PER CURIAM.—When the plaintiff left these bonds he took a receipt therefor, in which it was declared they were received " for deposit in the vault of this bank at the risk of the depositor." The parol evidence of the declarations of the cashier was not sufficient to change the effect of the written receipt so as to affect the bank. There was no evidence that it was accustomed to receiving bonds for safe keeping, except at the risk of the owner; nor that the directors had any knowledge that bonds were left at

13 NORRIS—27

[*Comp v. Carlisle Deposit Bank.*]

the instance, request or solicitation of the cashier. We are unable to discover any negligence in the manner in which the bank kept the bonds. They were placed in the vault. They were not lost by outside robbery, but by inside larceny. Whether kept in paper envelope or small tin-box, in either case, the cashier might readily have had access to them. He was of good repute, and no negligence can be imputed to the directors for retaining him in his position. Having full confidence in his integrity they trusted him with the property of the bank. They had no knowledge of any misconduct on his part. They were not bound to examine packages left on deposit without reward, to see if the contents remained. The bank was a bailee without hire. It is not necessary to consider the assignments in detail. We discover no error.

Judgment affirmed.