W. H. SHERWOOD, v. THE HOME SAVINGS BANK, Appellant.

Local custom: PLEADING. Where a local custom is relied upon as
1    forming part of the contract upon which the action is based it must be pleaded in the petition and not in the reply to be of avail; but where the custom is relied upon simply as evidence of some other fact in issue it need not be alleged.

Banks and banking: DEPOSIT OF SURETIES: NEGLIGENCE: BURDEN OF
2    PROOF. In an action against a bank for the value of papers deposited with it for safe keeping the allegations and proof of the deposit and breach of the implied contract to return the same make a *prima facie* case, without a showing of the bank's negligence in preserving the same by plaintiff; but loss notwithstanding the exercise of due care is an affirmative defense on which the bank has the burden of proof.

Same: LOCAL CUSTOM: EVIDENCE. In an action for the value of
3    lost securities deposited with a bank for safe keeping, evidence that it was the local custom of banks to receive and care for valuable papers of customers was admissible, on the question of the bank's powers and the cashier's authority to act for the bank, under a plea that the securities had been misappropriated by the cashier without fault on the part of the bank.

Submission of issue. Where there is a dispute in the evidence
4    as to whether valuable securities were deposited with a bank

for safe keeping, or left with the cashier personally, the issue should be submitted to the jury.

**Savings Banks:** SPECIAL DEPOSITS: AUTHORITY OF CASHIER. A savings bank has authority to receive special deposits of valuable securities for safe keeping, and when a cashier is held out to the public as having general power to act for the bank in that regard and has for some time exercised such power, his acts done within the scope of his authority are binding upon the bank.

**Deposit of securities:** CARE: CONSIDERATION. A bank receiving securities for safe keeping and the collection of interest is held to an exercise of such care in preserving the same, as business men of prudence would exercise in keeping property of like value in like circumstances.

**Misappropriation of securities:** NEGLIGENCE OF BANK: LIABILITY. Ordinarily a bank is not responsible for the act of its managing officer in appropriating to his own use a gratuitous special deposit, but where the bank retains in the position one whom it knows has been using bank funds for the purpose of private speculation, it is negligent in the exercise of ordinary care and becomes responsible for the misappropriation.

**Instructions:** BURDEN OF PROOF. An instruction which simply places upon a plaintiff a greater burden of proof than the law requires is not prejudicial to the defendant.

*Appeal from Hardin District Court.*— HON. J. H. RICHARD, Judge.

THURSDAY, SEPTEMBER 27, 1906.

ACTION for value of note and mortgage alleged to have been deposited with defendant for safe-keeping. From judgment as prayed the defendant appeals.— *Affirmed.*

*F. M. Williams* and *Nagle & Nagle,* for appellant.

*W. L. Weaver,* for appellee.

LADD, J.— On March 1, 1901, James F. and Adella Partlow executed to Edwin O. Soule a note for $1,100, payable ten years hence, with interest at the rate of 6 per cent.

per annum covered by interest coupons attached, and this was secured by a mortgage on a farm of eighty acres in Murray county, Minn., subject to a prior mortgage. of $800. Soule sold this note and mortgage to the plaintiff April 2, 1902, executing an assignment of the mortgage. The papers were delivered, whereupon plaintiff handed them back, saying that he had "no safe place to keep them," and that he would "leave them for safe-keeping and for them to collect the interest." This occurred at the place of business of the defendant bank, of which Soule was cashier. Plaintiff was credited on the books of the bank with $66, the amount of the coupon falling due March 1, 1903, on the 16th of that month. In July following Soule, without the knowledge or consent of plaintiff, transferred the papers to one Briggs, and in September was found to be a defaulter. Shortly afterwards plaintiff demanded of defendant the return to him of the note and mortgage, and, as this was refused, began this action for the value of the papers.

I. Inquiry was made of several witnesses as to the custom of the several banks in Iowa Falls with reference to receiving valuable papers of their patrons for safe-keeping.

1. LOCAL CUSTOM: pleading. The evidence was received over objection, and exception is taken to the ruling (1) because such custom was not pleaded, (2) knowledge thereof by plaintiff was not alleged, and (3) the custom of defendant could not be shown by proving that of other banks in the neighborhood. A local custom, if relied upon as entering into and forming a part of a contract, must be pleaded. *Lindley v. First National Bank,* 76 Iowa, 629; *Eller v. Loomis,* 106 Iowa, 276. And it must have been known to the parties contracting. *Rindskoff Bros. v. Barrett,* 14 Iowa, 101; *Smith v. Hess,* 83 Iowa, 238; *Hughes v. Stanley,* 45 Iowa, 622.

But it is not claimed in this case that the custom relied on formed any part of the agreement. In the petition the delivery of the papers to the bank is alleged, and its refusal to surrender the same when demanded. The answer denied

generally these allegations and specifically averred that the transaction was with Soule personally; that he converted the papers to his own use; that it was without the knowledge or consent of defendant and in excess of its corporate powers; that the service in any event was gratuitous, and defendant was free from any negligence in the matter. In reply the plaintiff denied the contents of the answer, alleged negligence on the part of defendant, and pleaded that it was the custom of defendant and the banks of Iowa Falls to receive valuable papers of their depositors for safe-keeping and to collect interest thereon without charge, and that, aside from its vocation of a savings bank, it carried on a general banking business similar to that done by other banks in Iowa Falls. These allegations pertain solely to the defendant's practice or custom in the transaction of business as bearing on the power of the corporation and the authority of the cashier to bind it in receiving the papers in its behalf, put in issue by the answer, and not to the terms or contents of the implied contract on which the action is based. As contended, the cause of action must be asserted in the petition. This appears from *Jones v. Marshall,* 56 Iowa, 739, where malice was averred in the reply only, and the court held that exemplary damages should not have been allowed. In *Marder v. Wright,* 70 Iowa, 42, the reply set up an entirely different cause of action than that contained in the petition and recovery thereon was adjudged to be erroneous; the court saying: " A plaintiff is not permitted to plead in a reply matters which are material only to the cause of action alleged in his petition. Much less will he be permitted to recover on a distinct cause of action which is only in his reply." In *Wilson v. Harris Bros.,* 68 Iowa, 443, the plaintiff combined his response to the counterclaim and an amendment to the petition in a pleading denominated a reply, and the court held that as the matters were pleaded by way of an amendment to the petition the mere matter of form had been waived by proceeding to try the issues raised without objection.

The case at bar is to be distinguished from those first cited, in that no new claim or element of damage is asserted in the reply, and from the last, in that the local custom was not alleged by way of amendment to the petition. The petition was sufficient in itself, and the implied contract averred therein was not added to nor detracted from by the reply. It merely responded to the defendant's denial of power to receive the deposits as alleged and Soule's authority to bind it, and on these issues evidence of the bank's course of dealing and of any local custom with reference thereto had a direct bearing and was admissible had no reply been filed. In other words, when a contract is made with reference to a local custom which it is claimed has become a part of it, such custom should be alleged, but when a practice or custom is incidental merely, and is relied upon only as evidence of some other fact put in issue, there is no more occasion for asserting it in the pleadings than any other evidence relied on to make out a case.

II. In response to the allegation that it had received the securities and refused to deliver them, the defendant pleaded, among other things, that its cashier had appropriated the papers, and that they have been lost without negligence on the part of the defendant. To this the plaintiff replied, averring specific acts of negligence, and defendant objected on the ground that it was not alleged in the petition. This was not necessary. The action was not one sounding in tort, but was for a breach of contract; that is, on the ground that the bank had refused to deliver the papers on demand, though it had received them upon the implied promise to return when called for. *Prima facie* the defendant was liable for this breach of contract, if there was any, and could excuse itself therefrom only by setting up the loss and that it occurred notwithstanding the exercise of ordinary care on its part. On this issue the burden of proof was on the defendant, and it was not incumbent on the plaintiff, under the circumstances

2. BANKS AND BANKING: deposit of securities: negligence: burden of proof.

disclosed, to affirmatively allege negligence.  *Tindall v. Mc-Carthy*, 44 S. C. 487 (22 S. E. 731); *Green v. Sizer*, 40 Miss. 530.  The evidence may have been introduced out of order, but this was not made a ground of objection.

-    III. Evidence of the local custom of banks in Iowa Falls, including defendant, with reference to receiving special deposits of valuable papers for safe-keeping and also of the general custom of like banks, was received over

3. SAME: local custom: evidence.

objection.  If it was a local custom of banks to receive valuable papers and the officers of defendant knew this or such was the general custom, knowledge of which is to be presumed, such evidence had a direct bearing not only on the bank's powers, as will be noted later, but on Soule's authority as well.  True knowledge of the local custom was not shown.  This might have been a ground for striking the evidence upon failure to prove such knowledge, but was not ground for its exclusion when offered for the order of the proof was discretionary with the court.

IV. Appellant contends that there was no evidence that the papers were received by the bank.  The plaintiff testified that, in handing them to the cashier, he said to him, " I would

4. SUBMISSION OF ISSUES.

leave them for safe-keeping and for them to collect the interest."  Soule testified that he, referring to plaintiff, " asked me to put them [the papers] in the safe and keep them for him at the bank.  No entry was made on the books of these papers.  They were merely left in the bank for safe-keeping."  This transpired at the bank's usual place of business, and it was for the jury to say whether, even though plaintiff had just purchased the security of Soule, the deposit was with the bank or its cashier personally.

V. The evidence was in conflict as to whether it was the custom of the defendant to receive securities of its patrons for safe-keeping.  This being so, the jury might have found as they did, that the custom had been followed, and therefore that the action of the cashier was not in excess of his

authority. The directors appear to have given little atten-

5. SAVINGS BANKS: special deposits: authority of cashier. tion to the management of the bank, but to have intrusted practically everything to this officer, and what he did within the scope of authority which might have been conferred would seem to be binding on the bank. If the cashier of a bank is permitted to exercise general authority with respect to its business for a considerable time — in other words, held out to the public as having authority in the premises — the bank is bound by his acts, as in the case of the agent of any other corporation in the same manner as if the authority were expressly conferred. *Wing v. Commercial & Savings Bank*, 103 Mich. 565 (61 N. W. 1009); *Fifth Ward Savings Bank v. Nat. Bank*, 48 N. J. Err. & App. 513 (7 Atl. 318); *Martin v. Webb*, 110 U. S. 7 (3 Sup. Ct. 428, 28 L. Ed. 49). Of course, this is on condition that what is done is not *ultra vires*. A savings bank is not prohibited by statute from receiving special deposits. Section 1841 of the Code provides that " Savings banks may receive on deposit the savings and funds of others, preserve and invest the same, pay interest or dividends thereon, and transact the usual business of such institutions, but shall not have power to issue bank notes, bills or other evidences of debt for circulation as money." The term " funds," as here employed, is not limited to money. It is used in connection with " savings," and was evidently intended to include notes, bills, stocks, bonds, and other securities appropriate for deposit in such an institution and which it has long been customary to leave there for safekeeping. In *Miller v. Bradish*, 69 Iowa, 278, the word " funds," in a statute prohibiting the diversion of the " funds," of a corporation was held to include all its resources. In *Perry v. Hunter*, 2 R. I. 80, this word was said to mean money and securities, more especially government securities. See *U. S. Greve* ( D. C.) 65 Fed. 490; *Hasbrook v. Palmer*, 11 Fed. Cas. 766. *Ayers v. Lawrence*, 59 N. Y. 192.

Aside from this, however, the power to " transact the usual business of such institutions " is specifically conferred, and ever since the decision in *Foster v. Essex Bank,* 17 Mass. 479 (9 Am. Dec. 168), receiving special deposits has been deemed appropriate for savings banks. True such institutions, under the statutes of this state, differ radically from savings banks as originally organized. Instead of being controlled by disinterested persons and the profits belonging to the depositors as formerly, the officers represent the bank and the profits accrue to the benefit of the stockholders. See *Ackenhauser v. People's Savings Bank* (110 Mich. 175) (68 N. W. 118.) But such change does not go to the nature of the business it may transact, at least to that in question. The bank had its option to undertake the duty of receiving valuable papers for safe-keeping or not, and, having elected to do so, it cannot evade liability for any default on its part in the performance of that duty in the manner exacted by law.

VI. The appellee contends that the deposit was not gratuitous, and cites authorities to the effect that papers left as collateral securities or for collection are not to be regarded as gratuitous bailment. See *Kershaw v. Ladd,* 34 Or. 375 (56 Pac. 402, 44 L. R. A. 236); *Thompson v. Bank of S. C.,* 30 Am. Dec. 345; *Third National Bank v. Boyd,* 44 Md. 47 (22 Am. Rep. 35); *Ouderkirk v. Central National Bank,* 119 N. Y. 263, (23 N. E. 875). See 1 Morse on Banks, section 215. But here the note and mortgage was deposited for safe-keeping, and the collection of interest was merely incidental and of inconsiderable advantage to the bank. In a somewhat similar case the deposit was held to be gratuitous. *Comp. v. Carlisle Deposit Bank,* 94 Pa. 409. Nevertheless an institution whose avowed object is to make money cannot be assumed to pursue the business of receiving such deposits save for some anticipated advantage to itself and the drawing or retaining a paying business furnishes as good a reason as

6. DEPOSIT OF SECURITIES: care: consideration.

though direct compensation were required. Moreover, entering upon such an undertaking ought to be deemed a good consideration for the discharge of its duties in a proper manner. See 1 Morse Banks, section 194.

Most of the authorities are to the effect that proof of gross negligence is essential to a recovery in event of the loss of a gratuitous deposit. A classification of negligence as " slight," " ordinary," and " gross " has been quite generally abandoned, however, and the more rational view adopted that any want of ordinary care constitutes actionable negligence. See *Jerolman v. Railway,* 108 Iowa, 177. More appropriately the measure is applied to the care exacted or duty imposed or undertaken. Conceding the deposit to have been gratutitous, we inquire what is the duty of a bank in the care of bonds or other papers deposited for safe-keeping. No one would contend that it should be held as an insurer. On the other hand, such papers are left with banks because of their special facilities for safely keeping them. Their duty is to be measured somewhat by their situation, and it is exacting none too much to require that banks accustomed to receive such deposits exercise that care which business men of prudence would exercise in keeping property of like value in like circumstances. *Bank v. Zent,* 38 Ohio St. 105 ; *Gray v. Merriam,* 148 Ill. 187 (39 Am. St. Rep. 176, 32 L. R. A. 772, 35 N. E. 812) ; *Preston v. Prather,* 137 U. S. 604 (11 Sup. Ct. 162, 34 L. Ed. 788.) The principle is well stated in the last case.

No one taking upon himself a duty for another without consideration is bound, either in law or morals to do more than a man of that character would do generally for himself under like conditions. The exercise of reasonable care is in all such cases the dictate of good faith. An utter disregard of the property of the bailor would be an act of bad faith to him. But what will constitute such reasonable care will vary with the nature, value, and situation of the property, the general protection afforded by the police of the community against violence and crime, and the bearing of surrounding

circumstances upon its security.   The care usually and gener-
ally deemed necessary in the community for the security of
similar property, under like conditions, would be required of
the bailee in such cases, but nothing more.   The general doc-
trine, as stated by text writers and in judicial decisions, is
that gratuitous bailees of another's property are not responsi-
ble for its loss, unless guilty of gross negligence in its keep-
ing.   But gross negligence in such cases is nothing more than
a failure to bestow the care which the property in its situa-
tion demands.   The omission of the reasonable care required
is the negligence which creates the liability; and whether
this exists is a question of fact for the jury to determine, or
by the court where a jury is waived.

The depositor knows, of course, that such corporations
necessarily act through its officers and agents, who have super-
vision of all the property within its keeping.   Ordinarily
the cashier is the guardian of the deposit as well as of the
securities and moneys of the bank.   In confinding his prop-
erty with the banks, he contemplates that the cashier or some
other agent of the bank shall have physical control of the
deposit and consents thereto.   If, then, the bank has selected
such officer or agent to whom this duty is delegated with due
regard to the interest intrusted to him, and has not retained
him under circumstances condemning it for lack of common
prudence in so doing and the deposit is lost through the
defalcation of such officer or agent, the risk is that of the
depositor.   The mere loss is not an indication of bad faith
on the part of the bank, for it also has confided its interest
with the delinquent.   It may plead that it did not know nor
have reason to suspect the want of integrity in its officers.

Ordinarily the master is liable for every wrong commit-
ted by the servant which is within the scope of its authority,
and it is sometimes difficult to draw the line
between acts within and without the master's
business.   But it is generally held that the act
of the cashier by which he appropriates to
his own use a gratuitous special deposit in the bank is not

7. MISAPPROPRIA-
TION OF FUNDS:
negligence of
banks: liabili-
ty.

an act within the bank's business or within the scope of his employment. The custody of the deposit ordinarily requires no affirmative act, but merely continuance of possession until the return is demanded. The cashier had nothing to do about the matter save to allow the note and mortgage to remain in the safe and collect the interest thereon. Consequently, in taking it to himself, he is said to have stepped aside from his employment to do an act for his own personal gain regardless of the business for which he was engaged. Such an act was not for the bank, nor was it so intended. He represented no one but himself; thereby dissolving any allegiance to his employer, and assumed a position adverse to all concerned. He was a stranger from without, who by robbery, burglary, or stealth deprives the bank of the special deposit. For the reasons these authorities hold that the bank is not chargeable for such loss unless due to its negligence in the selection or continuance of the cashier in its employment. The bank cannot be said to have stolen when there is, on its own part, no participation in the theft, in appropriating, or in intent to appropriate the property. Should the bank derive some advantage from the act of the servant's speculation, a different question would arise. *Bank v. Dunbar,* 118 Ill. 625 (9 N. E. 186); *Merchants' National Bank v. Guilmartin,* 88 Ga. 797, (15 S E. 831, 17 L. R. A. 322); *First National Bank v. Ocean National Bank,* 60 N. Y. 278, (19 Am. Rep. 181); *Gray v. Merriam,* 148 Ill. 179, (35 N. E. 810, 32 L. R. A. 769, 39 Am. St. Rep. 172); Preston v. Prather, *supra;* Foster v. Bank, *supra;* Scott v. Bank, 72 Pa. 471 (13 Am. Rep. 711.) See authorities collected in 5 Cys. 518.

The instructions to the jury were in accordance with these views. There was evidence tending to show that the cashier had been speculating on the board of trade in Chicago through local agents, since 1900, also that he had been incurring expenses out of proportion to the salary of $50 to $70 per month paid by the defendant and also that drafts

on the Chicago correspondent of the bank had been returned
protested a year previous to his discharge and that such specu-
lation was known to part of the directors; and also that the
protested drafts passed through the hands of one of the
directors.   The testimony of some of the directors to the
contrary merely put these facts in issue and the question
as to whether the bank, in view of the circumstances dis-
closed, was negligent in retaining Soule as cashier in charge
of the bank was a fair question for the jury.   In support
of these views see Scott v. National Bank of Chester Val-
ley, *supra;* Preston v. Prather, *supra;* Gray v. Merriam,
*supra; Baltimore Third National Bank v. Boyd,* 44 Md.
47 (22 Am. Rep. 35); Ouderkirk v. Bank, *supra; Martin
v. Webb,* 110 U. S. 7 (3 Sup. Ct. 428, 28 L. Ed. 49); *Phil-
lips v. Bank,* 140 N. Y. 556 (35 N. E. 982, 23 L. R. A.
588, 37 Am. St. Rep. 596); *Bank v. Hill,* 148 Mo. 380
(49 S. W. 1012, 71 Am. St. Rep. 615); *Merchants' Bank
v. Guilmartin* 93 Ga., 503 (21 S. E. 55, 44 Am. St. Rep.
182.)    In Scott v. National Bank, *supra,* the court observed
that " no officer in a bank, engaged in stock gambling, can be
safely trusted, and the evidence of this is found in the numer-
ous defaulters whose speculations have been discovered to be
directly traceable to this species of gambling.   A cashier,
treasurer, or other officer having the custody of funds thinks
he sees a desirable speculation, and takes the funds of his
institution, hoping to return them instantly, but he fails in
his venture, or success tempts him on; and he ventures again
to retrieve his loss, or increase his gain, and again and again
he ventures.   Thus the first step, often taken without a crimi-
nal intent, is the fatal step, which ends in ruin to himself
and to those whose confidence he has betrayed."

VII.   In the sixth instruction the jury was expressly
required to find that it had been the custom of the defendant
bank to receive special deposits for safe-keeping.   That it
was also required to find that there was a local custom in
Iowa Falls and among banks of like kind generally could

not have prejudiced the defendant. It merely placed a greater burden of proof upon the plaintiff than the law required. As the court required a finding that it was the custom of the defendant to receive special deposits, it was not material that knowledge of the local custom was not proven.

8. INSTRUCTIONS: burden of proof.

The record is without prejudical error, and the judgment is *affirmed*.

DEEMER, J.— (concurring). I agree to the conclusion reached in this case, but am not entirely satisfied with the reasons given therefor. As I understand it, there are degrees of care in all cases of bailment; and a purely gratuitous bailee is held only to slight care. *Jordan v. Reed,* 1 Iowa, 135. I doubt if the bank in this case was a gratuitous bailee. Indeed, the nature of its business to my mind negatives such an idea; but, however this may be, no complaint is made of the instruction on this point, and I find no others of which appellant may justly complain.

SHERWIN, J.— I concur with the view expressed by Mr. Justice DEEMER.