**IN THE COURT OF APPEALS OF IOWA**

No. 18-0565
Filed April 17, 2019

**JAMES HEAL,**
        Plaintiff-Appellant,

**vs.**

**BRIAN ANDERSON,**
        Defendant-Appellee.

_____

        Appeal from the Iowa District Court for Iowa County, Ian K. Thornhill, Judge.


        James Heal appeals the entry of a civil money judgment.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**


        John W. Pilkington of Nidey Erdahl Fisher Pilkington & Meier, PLC, Marengo, for appellant.

        Jennifer L. Zahradnik of Kollmorgen, Schlue & Zahradnik, P.C., Belle Plaine, for appellee.


        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

In September 2011, following a business relationship between the parties gone bad, James Heal locked Brian Anderson out of the business. *Heal v. Anderson*, No. 16-0621, 2017 WL 1399861, at *1–2 (Iowa Ct. App. Apr. 19, 2017). Heal filed a petition at law against Anderson on September 22, alleging breach of an oral contract. *Id.* at *2. The next day, September 23, a temporary injunction was granted preventing Anderson from returning to the property associated with the business, a salvage yard, where many of Anderson's tools and inventory remained. *Id.* Anderson filed a counterclaim alleging breach of contract and conversion of his property; during trial, he raised additional claims of unjust enrichment and bailment, which the trial court found were tried by consent. *Id.*; *see* Iowa R. Civ. P. 1.457. "In December 2014, while the temporary injunction was in place, Heal allowed his son, Aaron Heal, to enter the property and operate the salvage yard, including access and use to all of the tools, equipment, and inventory which Anderson left on the property when locked out." *Heal*, 2017 WL 1399861, at *2.

Following a September 2015 bench trial, the district court concluded Heal breached the parties' oral agreement, but the court did not award Anderson any damages in relation to that claim. *Id.* at *3. The court also found that Heal converted Anderson's property and awarded Anderson the full value of the converted property—$17,675.00 for vehicles, $40,035.23 for equipment, and $7280.00 in cash. *Id.* Heal appealed.

On appeal, this court affirmed in part, reversed in part, and remanded the matter to the district court. We concluded because "Heal came into lawful

possession of Anderson's property pursuant to the court-ordered injunction," a gratuitous bailment was established "and as such, Heal is only liable for the damage to and loss of Anderson's property if he was grossly negligent or acted in bad faith." *Id.* Because the evidence showed "some of Anderson's property was still in the buildings and [Heal] would return those items," this court concluded such "items have not been converted," and the appropriate remedy is for those items to be returned to Anderson. *Id.* at *4. Because no record was made concerning which items could be returned, we remanded the matter to the district court for further proceedings to "determine which items were disposed of by Heal after he obtained the injunction," noting such disposed of items have been converted along with the $7280.00 in cash and requiring Heal to pay damages for those items. *Id.* We also ordered, "if there are items that are returned to Anderson that were damaged while in Heal's care as a result of Heal's bad faith or grossly negligent actions, Heal is responsible for the reduced value." *Id.* We also concluded the district court's prior determination of the values of Anderson's property was supported by substantial evidence. *Id.* That list of valuations for the tools and equipment[1] is as follows:

| Item No. | Description | Quantity | Value |
|---|---|---|---|
| 1 | Mac Tools | Various | $9144.26 |
| 2 | Battery Charger | 1 | $300.00 |
| 3 | Oxy-Act Torch | 1 | $900.00 |
| 4 | Oxy-Act Tank | 1 | $400.00 |
| 5 | Oxy-Act Cart | 1 | $100.00 |
| 6 | LP Salamander | 1 | $80.00 |
| 7 | Race Motor–355 | 1 | $4000.00 |
| 8 | Race Motor–360 | 1 | $2000.00 |
| 9 | Cylinder Heads/Race Motors | 6 | $3600.00 |
| 10 | Aluminum Intake Manifolds | 5 | $750.00 |

---

[1] The values of Anderson's vehicle inventory are generally irrelevant to this appeal.

| 11 | Craftsman Tool Box | 1 | $400.00 |
|---|---|---|---|
| 12 | Tie Down Straps | 4 | $300.00 |
| 13 | Chain in Loader/HD Binder | 1 | $75.00 |
| 14 | Surveillance System | 1 | $308.87 |
| 15 | Sony TV | 1 | $50.00 |
| 16 | Printers | 2 | $300.00 |
| 17 | MAC AC Recovery Machine | 1 | $1200.00 |
| 18 | 305 V8 Motor ('34 International) | 1 | $2000.00 |
| 19 | Transmission ('34 International) | 1 | $800.00 |
| 20 | 355 Small Block Motor | 2 | $4000.00 |
| 21 | '34 International Parts | Various | $2500.00 |
| 22 | Wheels and Tires | 25 | $3125.00 |
| 23 | Router and Power | 1 | $327.10 |
| 24 | Carburetor | 1 | $700.00 |
| 25 | Signs | 2 | $200.00 |
| 26 | Stereo Equipment | 6 | $450.00 |
| 27 | MAC Mig Welder | 1 | $1800.00 |
| 28 | MAC Mig Welder Tank | 1 | $125.00 |
| 29 | Lincoln Welder | 1 | $100.00 |

*Id.* at *2.

In September 2017, Aaron, Anderson, and counsel visited the property to ascertain the presence and condition of the foregoing items. An evidentiary hearing was held in October. The court entered its remand ruling in February 2018. First, as to the tools and equipment, the court concluded items 6, 12, 13, 18, 19, 21, 29, and components of items 1 and 3 were still on the property and in "substantially the same condition as . . . when the bailment was created."[2] The court ordered these items to be returned to Anderson and for a corresponding reduction in the judgment against Heal in the amount of $6105.00. Next, the court concluded item 2 was still on the property and could be returned to Anderson but, because of Heal's "gross negligence in storing and caring for this item," its value

---

[2] As to items 1 and 3, the court found one of the Mac tools and the hoses and gauges to the Oxy-Act torch to be in the same condition, which were valued at $50.00 and $200.00, respectively.

would be reduced to $200.00. The court deducted this amount from the original judgment as well. The court found items 7 through 10, 17, 20, and 22 were still located on the property but, due to Heal's gross negligence in storing and caring for the items, they were valueless and, therefore, converted. The court found the remaining tools and equipment were no longer on the property, could not be returned to Anderson, and were thus converted. Finally, the court found all of the salvage vehicles remained on the property and could be returned to Anderson. As such, the court reduced the original judgment by $23,980.00[3] and entered judgment against Heal in the amount of $41,010.23. Heal appeals.

On appeal, Heal challenges the district court's conclusion that he was grossly negligent in storing and caring for items 7 through 10, 17, 20, and 22. This is a challenge to the sufficiency of the evidence underlying the court's findings. Our review of sufficiency-of-the-evidence challenges is for legal error. *See Estate of Hagedorn ex rel. Hagedorn v. Peterson*, 690 N.W.2d 84, 87 (Iowa 2004). "In a law action, findings of fact are binding on us if supported by substantial evidence." *Blackford v. Prairie Meadows Racetrack & Casino, Inc.*, 778 N.W.2d 184, 187 (Iowa 2010). "We view the evidence 'in the light most favorable to the trial court's judgment.'" *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006) (quoting *Bates v. Quality Ready-Mix Co.*, 154 N.W.2d 852, 854 (Iowa 1967)).

As to the items relevant to this appeal, the district court found Heal:

---

[3] This amount reflects the total value of the items ordered to be returned to Anderson: all of the vehicles ($17,675.00); one of the tools contained in item 1 ($50.00); the reduced value of item 2 ($200.00); the hoses and gauges of item 3 ($200.00); item 6 ($80.00); item 12 ($300.00); item 13 ($75.00); item 18 ($2000.00); item 19 ($800.00); item 21 ($2500.00); and item 29 ($100.00).

> [W]as grossly negligent in handling and storing these items by needlessly dismantling them, storing them in a manner that damaged their structural integrity, and/or exposing them to the elements as if they were salvaged items and not the working equipment of functional car parts they were when the gratuitous bailment began.

Heal argues the district court held him to a higher standard of care than that required under a gratuitous bailment. We note from the outset that Anderson argued below that some of the items, namely items 8, 10, and 22, were no longer in Heal's possession at the time of the remand hearing. We may "uphold a district court ruling on a ground other than the one upon which the district court relied provided the ground was urged in that court." *King v. State*, 818 N.W.2d 1, 10 (Iowa 2012) (quoting *Martinek v. Belmond-Klemme Cmty. Sch. Dist.*, 772 N.W.2d 758, 762 (Iowa 2009)).

Heal testified that, after obtaining the injunction in 2011, he did not do anything to differentiate his property from Anderson's and generally left everything in the place it was in when he locked Anderson out of the business. However, in the fall of 2014, Heal's son, Aaron, began operating his own business on the property. Aaron testified he has not utilized any of Anderson's property in his operation. As to Anderson's tools and equipment, Aaron testified he initially "[p]ut them all together, most of them in the warehouse" on the property. At some point he moved some of the items to a trailer in a "secured building." He subsequently moved them into a school bus, which, according to Aaron's testimony, "doesn't leak or anything." Other tools and equipment continued to be stored in the warehouse. According to Aaron, items 7 through 10, 20, and 22 were among the items that were ultimately placed in the bus, while item 17 remained in the

warehouse. Aaron testified he took "better" care of Anderson's items than he did his own.

On remand, the parties agreed that the burden would be on Heal to show by a preponderance of evidence that he was still in the possession of Anderson's property and that the property could be returned, while Anderson would have the burden to show any decrease in value of the returnable property as a result of Heal's conduct.

We first address Heal's evidentiary burden as to items 8 and 10. Upon our review of the evidence, we find Heal failed to show he was still in the possession of item 8, the 360 race motor, or that it could be returned to Anderson. We make the same finding as to item 10, the intake manifolds. Consequently, we affirm the district court's conclusion that these items were converted on this alternate ground, and the portion of the remand judgment attributable to these items, $2750.00. *See id.*

We find the evidence sufficient to conclude Heal retained in his possession items 7, 9, 17, 20, and most of item 22.[4] A comparison of photos, taken before the original trial and thereafter in relation to the remand hearing, and a review of the other evidence, shows item 7 and one of the motors contained in item 20 have been at least partially dismantled while in Heal's possession. While the other motor contained in item 20 was left intact, all three motors became rusted as a result of being exposed to the elements when placed in the bus. Viewing the evidence in the light most favorable to the judgment, *see Miller*, 720 N.W.2d at

---

[4] Item 22, the wheels and tires, will be discussed further below.

567, the evidence also shows the rust renders these three motors valueless. The evidence further shows item 9, the cylinder heads, have been rendered valueless as a result of being placed in the bus and consequently accumulating rust. Anderson testified item 17 was in usable condition in September 2011 but by the time of the remand hearing, its rusty condition rendered it unsafe for use. Anderson opined that if this item was stored inside, as Aaron asserted, it would not have rusted, at least on the outside.

"The law imposes specific duties upon bailees to care for the bailor's property while it is in their possession. The degree of care required to be exercised by a bailee depends upon the type of bailment." *Khan v. Heritage Prop. Mgmt.*, 584 N.W.2d 725, 730 (Iowa 1998). The law of the case is that the bailment created in this matter was a gratuitous, or involuntary, one. *See Heal*, 2017 WL 1399861, at *3; *see also Khan*, 584 N.W.2d at 730 n.4; *see generally Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006) (discussing the law-of-the-case doctrine). "[W]here a gratuitous bailment exists, the bailee is only liable if a reasonable degree of care is not exercised." *Theis v. Kalvelage*, No. 14-1568, 2015 WL 7567548, at *3 (Iowa Ct. App. Nov. 25, 2015). Some time ago, our supreme court explained:

> The exercise of reasonable care is in all such cases the dictate of good faith. . . . The general doctrine . . . is that gratuitous bailees of another's property are not responsible for its loss, unless guilty of gross negligence in its keeping. But gross negligence in such cases is nothing more than a failure to bestow the care which the property in its situation demands. The omission of the reasonable care required is the negligence which creates the liability; and whether this existed is a question of fact for the [factfinder] to determine.

*Sherwood v. Home Sav. Bank*, 109 N.W. 9, 12 (Iowa 1906). On appeal, Heal grapples with the meaning of "gross negligence" under Iowa law and argues the court held him to an enhanced degree of care. We need not decide the meaning of the term in this context, because the only question is whether the degree of care provided was reasonable under the circumstances. *See id.* ("The omission of the reasonable care required is the negligence which creates the liability.").

The evidence shows that items 7, a working race motor; 9, functional cylinder heads; and 20, two more working motors, were essentially just discarded in a bus on the property, which was open to the elements. The evidence shows this placement, as opposed to being placed inside where Anderson left them, rendered these items valueless. Further, two of the motors were dismantled. We agree with the district court that these items were treated "as if they were salvaged items and not the working equipment of functional car parts." *See id.* (noting the standard of reasonable care varies depending on "the nature, value, and situation of the property"). We find the evidence sufficient to support the district court's conclusion that Heal failed to exercise a reasonable degree of care in storing and caring for these items and such failure rendered the items valueless.

However, we find the evidence insufficient to conclude by a preponderance of the evidence that a failure to exercise a reasonable degree of care decreased the values of items 17 and 22. Although item 17 collected exterior rust, Anderson indicated in his testimony that the condition of the machine would have deteriorated regardless if not "cycled" regularly. Heal's failure to cycle the machine regularly was not unreasonable given the fact that Anderson never advised him of this maintenance task. As such, we find Heal is not liable for the conversion of this

item, and the judgment against him should be further reduced in the amount attributable to it, $1200.00. As to item 22, there was simply no evidence presented that the wheels and tires deteriorated to a state of less or no value as a result of how they were cared for or stored. That being said, the evidence shows that Heal continued to be in the possession of most of the wheels and tires, but eight of the "mag wheels" were unaccounted for, which the evidence shows are valued at $100.00 apiece. As such, Heal converted $800.00 worth of item 22, but he is not liable for the conversion of the remainder, $2325.00, and the judgment against him should be further reduced in that amount.

We affirm the district court's entry of judgment in part, reverse it in part, and remand the matter to the district court for entry of judgment against Heal and in favor of Anderson in the amount of $37,485.23,[5] plus interest in accordance with law, and an order for Heal to return to Anderson the items he is not liable for converting—item 17 and the unconverted portion of item 22. Anderson's request for appellate attorney fees is denied. Costs on appeal are taxed equally between the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

---

[5] This amount reflects the district court's remand judgment in the amount of $41,010.23, less $1200 for item 17 and $2325 for mag wheels not converted or reduced in value.