ACKENHAUSEN *v.* PEOPLE'S SAVINGS BANK.[1]

BANKS AND BANKING—SAVINGS DEPOSIT—PAYMENT TO WRONG
   PARTY—LIABILITY TO DEPOSITOR—BY-LAWS.

> The action of the directors of a savings bank, organized
> under the general banking law, in providing by by-law that
> the bank shall not be liable to a depositor for a payment to a
> third party who presents the former's pass-book, although the
> latter acquired possession of the book by stealing, cannot
> relieve the bank from the liability imposed upon it by the
> general statute (3 How. Stat. § 3208c5) to repay all deposits
> to "the depositor or his lawful representative," unless the at-
> tention of the depositor is called to such by-law, and he ac-
> tually or impliedly assents thereto.[2]

Error to Wayne; Carpenter, J.   Submitted April 24,
1896.   Decided July 21, 1896.

*Assumpsit* by Ernst Ackenhausen against the People's
Savings Bank to recover the amount of a savings deposit.
From a judgment for defendant, plaintiff brings error.
Reversed.

*William L. January* (*Charles C. Stewart*, of coun-
sel), for appellant.

*Keena & Lightner*, for appellee.

MOORE, J.   The plaintiff came from Germany to
Detroit in December, 1893.   On the steamer he made the
acquaintance of one Lange, and they came on to Detroit
together, and plaintiff roomed and boarded with Lange
and his family.   Both Lange and plaintiff spoke the
English language a little.   Plaintiff had a thousand dol-

---

[1] Rehearing denied October 6, 1896.

[2] On the effect of corporate by-laws as notice there is a note collat-
ing the authorities with *Moyer* v. *East Shore Terminal Co.*, (S. C.)
25 L. R. A. 48.

lars in money that he desired to put where it would be safe, and was advised to deposit it in the defendant bank, which he did, Lange going with him when he made the deposit. The bank has a large deposit account and a large number of depositors. Plaintiff had never deposited money before. At the request of the clerk to whom he paid the money, he wrote his name in a book, so the bank could have his signature. The bank gave to the plaintiff a deposit book, containing printed by-laws, reading as follows:

"3. On making the first deposit, the depositor shall sign his or her name in the signature book of the institution, which contains a copy of these rules and regulations, and to which the depositor will assent before his or her deposit can be received by this institution."

" 7. Money deposited in this institution will be entered in a book which will be given to each depositor. This small book will be the depositor's voucher, or evidence of his or her deposit in the institution. When money is withdrawn, this book given to the depositor shall be brought in to the bank, to have the payments entered therein. Depositors can draw money themselves, or, in case of absence or sickness, it will be paid to their order, properly witnessed, and accompanied by the book."

"10. While the officers of this institution will do their utmost to prevent fraud, yet, as they will be unable to identify every depositor, this institution will not be responsible for loss sustained when a book has been mislaid, stolen, or lost, if, before the cashier is notified thereof, such book be paid in whole or in part on being presented.

"11. If a book be mislaid, stolen, or lost, the owner is required to give immediate notice of the fact to the cashier of this institution."

There is nothing to indicate that plaintiff's attention was called especially to these by-laws, or that he even read them. The plaintiff left his deposit book in his room at Lange's house, and went to Cleveland. While in Cleveland, plaintiff got $500 from Lange. Seven days after the deposit was made, the deposit book was presented at the bank, and the entire $1,000 was withdrawn. It was admitted in court that this was done by Lange, and

that he forged the plaintiff's signature. The trial court instructed the jury that—

"The $500 paid by Lange to Ackenhausen must be treated as a payment. Lange took his money to the amount of a thousand dollars. Lange had advanced him $500. To hold any other way than that would permit the plaintiff in this suit to get $1,500 and to take $500 of this thousand dollars to Lange, and pay back to him. To avoid circuity of action, I make one lawsuit take the place of three lawsuits, and I charge you, as a matter of law, that that five hundred dollar payment should be allowed under any circumstances. Now, for the purpose of this case, the only question for you to consider is this: Did Lange, in getting this money, act under an authority from the plaintiff? If you find that Ackenhausen gave Lange authority to draw the deposit from the bank, and the bank paid it to Lange upon presentation of the book, the plaintiff is not entitled to recover. It is not necessary that such authority to draw the money should be in writing. A verbal authority, accompanied by delivery of the book to Lange, would be sufficient to authorize Lange to sign Ackenhausen's name to the order, surrendering the book, and receiving the money. But I charge you that, if he did not have authority, then you are to render a verdict for the plaintiff. So that is the only question in the case: Did Lange have authority or didn't he? If he did, your verdict should be for the defendant; if he did not, your verdict should be for the plaintiff. But for the purpose of this case I charge you that one who impersonates a depositor without his knowledge, and signs such depositor's name on the check or receipt, is not such depositor's representative, even though he may at such time present to the bank such depositor's bank book. If the money which was deposited by plaintiff in this case was paid out by the bank to one Lange, without authority of the plaintiff, then the defendant is liable in this action. If you come to the conclusion that this was paid without authority, then you will render a verdict for the plaintiff. The amount of that verdict will be $500, with interest from the time of this demand, which would be from the 24th of February, 1894, at 6 per cent.

"Now, there are two special questions which I will

submit to you: (1) Was the money deposited by plaintiff in defendant bank drawn by his authority? That is the question which is to control your general verdict, as I have already indicated. You will answer that 'Yes' or 'No,' according as you believe the truth to be. (2) Was the money deposited by plaintiff in defendant bank negligently paid out by defendant's teller? That I instruct you to answer 'No.' This is a formal matter to get this question and the answer on record, so that you will answer that as I have instructed you."

The jury rendered a verdict in favor of plaintiff for $535, and answered special question 1 "No," and special question 2 "No," as instructed by the court. The court entered judgment for defendant *non obstante veredicto*, and the plaintiff appeals.

A good many assignments of error have been taken, but those necessary to be considered relate to the effect of the by-laws upon the parties. It is claimed by the defendant that the deposit of the money, the issuing of the deposit book with its copy of the by-laws, and its acceptance by the plaintiff, and his signature, were all parts of one transaction, which resulted in a contract by which the bank was relieved from any further liability under the circumstances of this case. The counsel for the bank call the attention of the court to the following sections of the statute: Section 26 of the banking law (Pub. Acts 1887, page 233) provides that savings banks shall have power to receive deposits, and says:

" All deposits in said banks shall be repaid to the depositors, or his or her lawful representatives, when required, at such time or times, and with such interest and under such regulations, as the board of directors of the bank from time to time prescribes, which regulations shall be printed, and conspicuously exposed in some place accessible and visible to all in the business office of said bank."

Section 28 provides:

" A pass-book shall be issued to each depositor in the savings department, containing the rules and regula-

tions adopted by the board of directors governing such deposits, in which book shall be entered each deposit made by, and each payment made to, such depositor; and no payment or check against any such savings account shall be made unless accompanied by and entered in the pass-book issued therefor, except for good cause, and on assurances satisfactory to the officers of the bank."

It is insisted that the bank complied with these provisions of the statute, and that plaintiff, because of his contract with the bank, has no cause of action against it; citing *Schoenwald* v. *Bank*, 57 N. Y. 418; *Appleby* v. *Bank*, 62 N. Y. 12; *Sullivan* v. *Institution*, 56 Me. 507; *Goldrick* v. *Bank*, 123 Mass. 320. The cases just cited undoubtedly hold that under the laws of the States where the decisions were rendered, and the by-laws in force in those banks, there was no liability; and, if the savings banks which were parties to the litigation involved in those cases were created under like laws, and possessed with the same powers as savings banks possess in this State, the decisions would be conclusive. Until recently the primary idea of a savings bank has been that it is an institution in the hands of disinterested persons, the profits of which, after deducting the necessary expenses of conducting the business, inure wholly to the benefit of the depositors, in dividends, or in a reserved surplus for their greater security. They were without capital, and managed by trustees. The banks themselves derived no benefit whatever from any deposits or the produce thereof. *Huntington* v. *Bank*, 96 U. S. 395. An examination of the statutes of Maine, Massachusetts, and New York at the time the decisions cited by the counsel were rendered will disclose the fact that the savings banks mentioned therein were created and managed for the benefit of the depositors. They were managed by trustees, and, after deducting the expenses of the management of the business, the depositors were entitled to the profits; so that every depositor was directly interested in having the losses as small as possible. It will also appear that there

was no statute requiring the deposits, with interest, to be paid to the depositor or his legal representative. In this State, savings banks like the defendant bank are organized under the general banking law. They are required to have a capital stock and stockholders. The depositors have no share in the profits of the business beyond the interest paid on their deposits; the profits of the business all belong to the stockholders. The conditions surrounding the two systems of banking are so unlike that the decisions under one system are not likely to be controlling when litigation arises under the other system. It may well be argued that, if the depositors are to share in the profits of the business when it is profitable, they shall accept its losses without complaining, and not seek to hold the bank liable. On the other hand, if the bank is to take the profits of the business, where is the justice of asking the depositor to take the risks?

In 2 Morse, Banks (3d Ed.), § 617, it is stated of a savings bank:

" The depositors are the bank. The trustees and officers are their agents for receiving and loaning their money, and the profits belong to the depositors."

In the following section it is stated:

" Although a bank may be called a savings bank, if it is really a stockholders' bank, where the capital is owned by the shareholders, the name will amount to nothing; and in such a bank a deposit creates the relation of debtor and creditor." *Ward* v. *Johnson*, 95 Ill. 241.

It would logically follow that if the depositors are the bank, and the trustees and officers are the agents of the depositors, any regulation or by-law adopted by the agent would bind the principal,—that is, the depositors,— and they would be bound by it. On the other hand, if the relation between the bank and the depositor is that of debtor and creditor, the general rule would apply that the by-laws of a corporation are binding upon none but its members and officers. Ang. & A. Corp. § 359.

In this State the officers of the bank are the agents of the bank, and not the agents of the depositors. A by-law passed by them is a by-law of the bank, and not of the depositor, and if the effect of it is to change the relation of the creditor to the debtor so as to relieve the obligation of the debtor to the creditor, must not the creditor have his attention called to the by-law in such a way that he shall understand its effect before he shall be bound by it? In *Davis* v. *Bank*, 53 Mich. 166, Justice CAMPBELL said:

"The contract of a depositor with his banker does not differ in any material way from any other contract whereby one person becomes bound to take charge of and repay another's funds. As between banker and depositor, there can be no doubt that the bank will be protected in paying out money in such way and on such terms as the depositor has authorized. And, on the other hand, * * * the contracting party can lawfully control his own funds until he has disposed of them. * * * The bank book is no contract, and is only one of the means of indicating the state of the funds. * * * The money belonging to one person cannot cease to belong to him until he does some act to dispose of it." See *Burtnett* v. *Bank*, 38 Mich. 634.

It was held in *Smith* v. *Bank*, 101 N. Y. 60, where a savings bank sought to justify the payment by it of a depositor's money to a stranger upon the ground that such payments were made to a person having possession of the depositor's pass-book, that—

"Such pass-book is not negotiable paper, and its possession constitutes in itself no evidence of a right to draw money thereon. It merely imports a liability of the bank to the depositor for the moneys deposited, and an agreement to repay them at such time and in such manner as he shall direct. This contract is implied from the nature and objects of the transaction occurring between the parties. The depositor may, by special contract, authorize payments to be made in some other manner than by his directions; but, in order to make such payments a protection to the bank, it is necessary for it to show some

special agreement with the customer, authorizing such a mode of payment."

Then follows an interesting discussion of the effect of by-laws, which it is not necessary to repeat here, as we have indicated that the *status* of savings banks in the State of New York is quite different from the *status* of the savings banks of this State.

We think the requirement of the statute that the deposits shall be paid to the depositor or his legal representatives cannot be changed by a by-law, unless the attention of the depositor is called to the by-law, and he assents thereto, actually or impliedly. We think it was error in the learned trial judge to render a judgment for the defendant, and that he should have rendered a judgment in favor of the plaintiff upon the verdict of the jury, and for the amount thereof.

The judgment is reversed, and case remanded, with directions to enter judgment upon the verdict.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.