## First National Bank of Elizabethtown, Ky. v. Commonwealth, For Use, et al.

(Decided May 25, 1911.)

## Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Escheat of Land Owned by National Banks—Land acquired by a national bank, that is not proper or necessary for carrying on its legitimate business, and that has been held by it for a longer period than five years, is subject to escheat.

2. National Banks—Are created by Congressionel legislation, and the State has no power to enact laws concerning them that will in any manner interfere with their efficiency or frustrate the purpose of their creation. But as the national banking act only permits national banks to hold real estate not necessary in the conduct of their business for five years, the protection afforded by Congress ends when the five years expires and thereafter the State laws become operative, and land held for a longer time than five years is subject to escheat under the constitution and statute of the State.

HELM & HELM for appellant.

JAMES C. POSTON, LAWRENCE S. POSTON and WALLACE A. McKAY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This action was brought in 1908 by the Commonwealth for the use of the Louisville School Board to escheat certain lots of land in the city of Louisville owned by the appellant bank and worth some $2,000. The lower court granted the relief sought, and the bank appeals.

Authority to maintain an action like this is found in section 192 of the Constitution, reading:

"No corporation shall engage in business other than that expressly authorized by its charter, or the law under which it may have been or hereafter may be organized, nor shall it hold any real estate, except such as may be proper and necessary for carying on its legitimate business, for a longer period than five years, under penalty of escheat."

And section 567 of the Kentucky Statutes, reading:

"No corporation shall engage in business other than that expressly authorized by its articles of incorporation or amendments thereto; nor shall any corporation, di-

rectly or indirectly, engage in or carry on in any way the business of banking, or insurance of any kind, unless it has become organized under the laws relating to banking and insurance; nor shall any corporation hold or own any real estate, except such as may be necessary and proper for carrying on its legitimate business, for a longer period than five years under penalty of escheat.''

These sections have been fully upheld and construed in German Insurance Co. v. Commonwealth, 141 Ky., 606; Louisville School Board v. King, 127 Ky., 824; Commonwealth v. Chicago, &c., R. Co., 124 Ky., 497; Commonwealth v. Louisville Property Co., 139 Ky., 689; Commonwealth v. Thomas, 140 Ky., 789; and, except for the fact that the appellant is a national bank there would be no difficulty in affirming upon the authority of the cases cited the judgment appealed from.

But, as the appellant corporation is a national bank and the record presents questions that have not heretofore been before the court, we will carefully consider the argument of counsel in support of the proposition that the State can not escheat land owned by a national banking corporation although it would be subject to escheat if owned and held by any other corporation.

The appellant bank is located in Elizabethtown, Hardin County, Kentucky, and the real estate sought to be escheated is situated in Louisville, Jefferson County, Kentucky. It appears that in 1902 the bank acquired this property in satisfaction of a pre-existing indebtedness, and that at all times since it acquired the property it has been anxious to dispose of it, but has not done so because a purchaser could not be found who would pay such a sum as would enable the bank to realize a fair price for the property. It is also conceded that the acts of the bank relating to the manner in which it acquired this property and the reason it is holding it have been reported from time to time to national bank examiners and the Comptroller of the Currency, all of whom have approved the action of the bank in holding the real estate.

In section 5137, of the Revised Statutes of the United States, it is provided that:

''A national banking association may purchase, hold and convey real estate for the following purposes and for no others: (1) Such as shall be necessary for its immediate accommodation in the transaction of its business;

(2) Such as shall be mortgaged to it in good faith by way of security for debts previously contracted; (3) Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings; (4) Such as it shall purchase at sales under judgments, decrees or mortgages held by the association, or shall purchase to secure debts due to it. But no such association shall hold the possession of any real estate under-mortgage or the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years.''

Upon the facts and the Federal law relating to national banks, it is contended that as the appellant bank is an agency of the Federal government, and Congress has provided a complete system of laws controlling and regulating the creation and organization of national banks, the manner in which they shall conduct their business, and the conditions under which they may acquire and hold real estate, that the State has no authority to in any manner interfere with the affairs of these banks. And so the State laws applicable to domestic and other corporations are wholly inoperative as to these institutions, and the Commonwealth is without power to limit the quantity of real estate a national bank may own and hold or the time during which it may own and hold it or to escheat land owned and held in violation of the laws of the Commonwealth.

It may be conceded at the outset that the State is without authority to enact laws, either in the form of constitution or statute that in any manner conflict with the national banking act or interfere with or undertake to regulate or control the business that national banks are authorized by the Federal statute to carry on.

As said in Davis v. Elmira Savings Bank, 161 U. S. 275, 40 L. Ed., 700:

''National banks are instrumentalities of the Federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a State to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the Federal government to discharge the

duties for the performance of which they were created. These principles are axiomatic and are sanctioned by the repeated adjudications of this court.''

This much being conceded, it is manifest that if the Commonwealth can succeed in this action, it must be upon the ground that in the escheat of this property no at tempt is made to conflict with the laws of the United States or to impair the efficiency of the bank or control the conduct of its legitimate business as a banking institution. The Federal govermnent created the national banking system and reserves to itself the exclusive right through Federal legislation to direct and control its conduct, but we do not think it was intended by Congress to confer upon these banks the power to own and hold lands in such a manner as to violate the laws of the State when to so own and hold such property would not contribute anything to their efficiency as instrumentalities of the Federal government. We can not believe that it was contemplated that these institutions might in defiance of State laws engage in business or acquire and hold property that had no fair or legitimate connection with or relation to the business of banking. In other words, our opinion is that while the State can not by either constitution or legislation directly or indirectly regulate or control the organization or conduct of national banks, so as to interfere with the legitimate business for which they were created, its laws applicable to banks and other corporations may be invoked against national banks when they attempt to exercise rights or do things outside the scope of the business they were created to carry on, and that are not essential to their existence or efficiency. We think that when' a national bank exceeds the purpose of its creation and goes beyond the scope of its functions as a national banking institution, that the State may deal with such of its transactions as are in excess of the authority conferred by Congress and in violation of the laws of the State, as it would deal with the business or property of any other banking corporation. This view finds support in the Davis case, supra, where the court said:

''Nothing of course in this opinion is intended to deny the operation of general and undiscriminating State Laws on the contracts of national banks, so long as such laws do not conflict with the letter or the general objects and purposes of congressional legislation.''

. Also in McClellan v. Chipman, 164 U. S., 347, 51 L. Ed., 461, where an insolvent debtor conveyed to a national bank real estate, thereby giving it a preference. The conveyance was assailed under the Massachusetts statute by other creditors as a preference. The bank resisted the right of the other creditors to question the conveyance upon the ground that under the act of Congress national banks were entitled to take conveyances of real estate to secure pre-existing debts, and that the provisions of the Massachusetts statute were in conflict with the act of Congress. In the course of the opinion holding that the State law was not in conflict with the act of Congress and that the other creditors had a right to share in the property conveyed to the bank, the court said:

"National banks are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law. It is only when the State law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional. * * * Nor is there anything in the statutes of the State of Massachusetts here considered which in any way impairs the efficiency of national banks or frustrates the purpose for which they were created. No function of such banks is destroyed or hampered by allowing the banks to exercise the power to take real estate, provided only they do so under the same conditions and restrictions to which all the other citizens of the State are subjected, one of which limitations arises from the provisions of the State law which in case of insolvency seeks to forbid preferences between creditors. Of course, in the broadest sense, any limitation by a State on the making of contracts is a restraint upon the power of a national bank within the State to make such contracts, but the question which we determine is whether it is such a regulation as violates the act of Congress. * * * As well might it be contended that any contract made by a national bank within a State in violation of the State laws on the subject of minority or coverture was valid because State laws were in conflict with the act of Con-

gress or impaired the power of the bank to perform its functions.''

Again, in First National Bank v. Commonwealth of Kentucky, 9 Wallace, 356, 19 L. Ed., 701, it is said:

''The most important agents of the Federal government are its officers, but no one will contend that when a man becomes an officer of the government he ceases to be subject to the laws of the State. The principle we are discussing has its limitation—a limitation growing out of the necessity on which the principle itself is founded. That limitation is that the agencies of the Federal government are only exempted from State legislation so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government. The salary of a Federal officer can not be taxed. He may be exempted from any personal service which interferes with the discharge of his official duties, because those exemptions are essential to enable him to perform those duties. But he is subject to all the laws of the State which affect his family or social relation, or his property, and he is liable to punishment for crime, though the punishment be imprisonment or death. So of the banks. They are subject to the laws of the State and are governed in their daily course of business far more by the laws of the State than by the nation.''

It is not contended, and could not well be, that the property sought to be escheated was proper or necessary for the use of the bank in the conduct of its business, or that its escheat by the State will impair the efficiency of the bank. Indeed, the case for the bank is put entirely upon the ground that as the national banking act permits national banks to acquire and hold real estate, the State can not escheat such property although it is held in violation of the laws of the State. But, as we have seen, national banks are not altogether exempt from the operation of the laws of the State in which they do business. They are amenable to State laws to the same extent as other similar institutions, if such laws do not frustrate the object of their creation, impair their efficiency or discriminate against them and are not in conflict with the national banking act. But beyond this the State may not go, as the State has no power to nullify the paramount authority of Congress. In this connection it is

important to notice that Congress has provided that national banks shall not hold real estate acquired under mortgage or to secure debts for a longer period than five years, thereby fixing the same period of limitation as is fixed in the Constitution and statute of the State for the holding of such property by State banks and other corporations. We do not regard this coincidence as a mere accident. We think both the Federal and State legislative bodies deliberately fixed five years as a reasonable time in which banks in the one case and all corporations in the other might dispose of real estate not needed in the conduct of their corporate business. This Federal legislation placing a limitation upon the power of national banks to hold real estate indicates that it was not the policy of Congress to permit national banks to hold indefinitely land acquired in the conduct of their business. The act of Congress protects national banks in their holding of real estate for five years, but it does not extend them protection beyond that time. When the five years expires, the protection extended by Congress ends, and then these banks hold lands acquired as those involved in this controversy were, not under the act of Congress, but subject to the laws of the State. Therefore, when the State under authority of its laws seeks to escheat real estate owned by national banks for a longer period than five years, and which is not necessary to enable them to carry on their business, the banks can not shelter themselves under Congressional legislation or save themselves from the operation of the State laws under the claim that their holdings are authorized by the national banking act. If Congress had deemed it essential to the welfare and prosperity of these institutions that they should be allowed to hold land acquired in satisfaction of debts for a longer time than five years, it would have so declared; and the failure to do so is persuasive if not convincing evidence that it was not intended to confer upon national banks the right to hold real estate for a longer time than the period fixed in the act.

It is suggested by counsel for appellant that as the period of five years provided in the Constitution and statute during which real estate held by corporations shall not be subject to escheat is a mere arbitrary limitation, the State might through the same agencies fix the period at three or even two years, and so if the power

rests in the State to escheat the property of national banks it might exert this power during the time national banks were authorized by the act of Congress to hold real estate, and thus nullify the Congressional legislation. We do not, however, deem it relevant in the consideration of the case before us to determine whether or not the State would have authority to escheat lands owned by national banks before the expiration of five years. As the case now stands, we are well satisfied that there is no conflict between the State and Federal legislation on this subject, and there is no reason for entering into the discussion of a question that may never arise and that is certainly not presented by this record.

Wherefore, the judgment of the lower court is affirmed.

JUDGE MILLER not sitting.