[Sac. No. 3215.  In Bank.—August 29, 1921.]

STATE, Respondent, v. ANGLO & LONDON PARIS NA-
TIONAL BANK OF SAN FRANCISCO (a Corpora-
tion), et al., Defendants; FIRST NATIONAL BANK
OF SAN JOSE (a Corporation), Appellant.

[Sac. No. 3047.  In Bank.—August 29, 1921.]

STATE, Respondent, v. ANGLO & LONDON PARIS NA-
TIONAL BANK OF SAN FRANCISCO (a Corpora-
tion), et al., Defendants; THE FIRST NATIONAL
BANK OF SANTA BARBARA (a Corporation),
Appellant.

[Sac. No. 3217.  In Bank.—August 29, 1921.]

STATE, Respondent, v. ANGLO & LONDON PARIS NA-
TIONAL BANK OF SAN FRANCISCO (a Corpora-
tion), et al., Defendants; THE CROCKER NATIONAL
BANK OF SAN FRANCISCO (a Corporation), Appel-
lant.

[1] Escheat — Unclaimed Bank Deposits — Code Provision — Ap-
plicability to National Banks.—Section 1273 of the Code of
Civil Procedure, providing for the escheat to the state of bank
deposits unclaimed for twenty years, is applicable to banks
organized and doing business under the laws of the United States,
it not being in express conflict with any federal law nor, in its
operation, incapacitating such a bank from discharging its duties
to the government or impairing its efficiency as a governmental
agency.

[2] Id.—Nature of Escheat—Construction of Code.—The provision
of section 1273 of the Code of Civil Procedure that the amount of
money deposited shall escheat to the state, is to be given a reason-
able construction and has reference to the right or claim of the
depositor to the indebtedness created by the deposit and not to
the identical funds deposited.

[3] Id.—National Bank Deposits—Sovereignty Entitled to Es-
cheat.—The relation between a national bank and its depositor
is governed by the state and not by the federal law, and the
sovereignty to which the escheat inures is the state and not the
United States.

1.  Escheat of bank deposits, note, Ann. Cas. 1914B, 157.

APPEALS from judgments of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Leib & Leib, Morrison, Dunne & Brobeck and R. B. Canfield for Appellants.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

SHAW, J.—This is an action by the state of California, begun in pursuance of the provisions of section 1273 of the Code of Civil Procedure, against the above-mentioned defendants and a large number of persons alleged to be depositors in said banks to obtain a judgment against said banks, respectively, declaring that the credits of the depositors therein mentioned in the respective banks have escheated to the state of California, and directing the respective banks to forthwith deposit the same with the state treasurer. Separate findings and a separate judgment were given and entered in the case with respect to each of the three defendants who are appellants above named. From each of these judgments the respective banks have taken separate appeals and the same are presented in separate transcripts filed in this court. The three appeals all raise the same questions and they will be considered together as one case.

The questions presented in these cases, with one exception, are considered and fully treated in the opinions of this court in *State* v. *Security Sav. Bank, ante,* p. 419, 199 Pac. 791, and in *State* v. *Savings etc. Co., ante,* p. 294, 199 Pac. 26, and were thereby decided adversely to the contentions of the appellants. The facts presented in the cases now before the court are in all respects similar to those stated in the opinion in *State* v. *Security Sav. Bank, supra.* It is unnecessary to restate those questions or to repeat the reasons given in support of our conclusions thereon. We refer to those decisions for such statement.

The one question not considered in those decisions arises from the fact that each of the three appellants in the cases now under consideration is a national bank organized and

doing business under the laws of the United States.  At the time the rehearings were granted from the decisions of the district court of appeal of the third district on the appeals of the First National Bank of San Jose and the Crocker National Bank of San Francisco, the other cases above mentioned were pending and the rehearings were granted because we deemed it best to have the entire subject before this court before any decision therein should become final. With respect to the question arising out of the fact that the appellants now before the court are national banks governed by the laws of the United States, the opinion prepared by Mr. Justice Burnett of the district court of appeal of the third district on the appeal of the First National Bank of San Jose (Sac. No. 3215) is satisfactory to this court, and we hereby adopt the same as the opinion of this court.  It is as follows:

"It is not disputed that the general rule is that 'the power to regulate property within the limits of the state, the modes of acquiring and transferring it and the rules of descent and distribution of property are subjects belonging exclusively to the jurisdiction of the state,' but appellant insists that said section 1273 of the Code of Civil Procedure has no application to deposits made in national banks for the reason that 'the sovereign that created national banks is the United States,' that such sovereign alone has the right to enact, and has enacted, laws for the government of national banks and that such deposits are subject to and controlled by said statutes entirely independent of any enactment passed by the state legislature.  This is the objection as we understand it, stated in somewhat general terms.  Some more specific considerations are urged but they are based upon the fundamental principle already stated.  Indeed, appellant considers such legislation, so far as it may be said to apply to national banks, as a regulatory measure and it is declared: 'The state has no power to regulate national banks.  The regulation of national banks has always been solely within the province of the United States and not in any degree within the province of the state, especially when attempted regulation of the state would conflict with the laws of the United States regulations, as is the case here.'

"The extent to which said banks may be subject to state statutes has been settled in general terms by the decisions of the United States supreme court, although much has been left to the exercise of a wise discretion in the application of the general principle to the particular facts of each case.

"In *McClellan* v. *Chipman*, 164 U. S. 347, [41 L. Ed. 461, 17 Sup. Ct. Rep. 85, see, also, Rose's U. S. Notes], it is said: 'Two propositions have been long since settled by the decisions of this court: First, national banks, "are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on state law. It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional." *National Bank* v. *Commonwealth*, 9 Wall. (U. S.) 362, [19 L. Ed. 703, see, also, Rose's U. S. Notes].

" 'Second, "National banks are instrumentalities of the Federal government created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties, or control the conduct of their affairs, is absolutely void, whenever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislature, or impairs the efficiencies of these agencies of the Federal government to discharge the duties for the performance of which they were created." *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 283, [40 L. Ed. 700, 16 Sup. Ct. Rep. 502, see, also, Rose's U. S. Notes].

" 'These two propositions, which are distinct, yet harmonious, practically contain a rule and an exception, the rule being the operation of general state laws upon the dealings and contracts of national banks, the exception being the cessation of the operation of such laws whenever they expressly conflict with the laws of the United States or frustrate the purpose for which the national banks were created, or impair their efficiency to discharge the duties imposed upon them by the law of the United States.'

[1] "It is not contended that there is any statute of the United States providing for the forfeiture of what is called *inactive* deposits in national banks, nor is it claimed that congress has by any legislation limited the time within which such deposits may be checked out. Indeed, it is admitted that there is no federal statute expressly in conflict with said section of the Code of Civil Procedure. In fact, it is apparent that congress has not attempted to legislate on this subject at all. Hence, it seems clear that the legislation herein does not 'expressly conflict with any law of the United States,' and is therefore not required to yield to the paramount authority of the Federal government because inconsistent therewith.

"It seems equally plain that this statute, in its operation, does not incapacitate the bank from discharging its duties to the government, nor does it in the least impair its efficiency as a governmental agency. It is not denied that the depositor could at any time while the bank is a going concern withdraw his deposits, with interest, or—what is substantially equivalent—require the same amount to be paid to him in honor of his check; nor is it doubted that he could assign his claim and thereby clothe the assignee with the same right. In either of such events it should not be deemed an interference with the proper administration of the business of the bank or an impairment of its usefulness as a governmental agency. Indeed, such withdrawal or the satisfaction of such claim would be in entire harmony with one of the primary purposes of the organization and operation of such banks and is contemplated by the very terms of the charter.

"That a claimant may have succeeded to the right to demand such payment otherwise than by assignment—for instance, by abandonment or forfeiture—would not, of course, render the transaction any the more a 'disturbance of the legitimate functions of the bank. In other words, it must be admitted that as far as this question and the interest of the bank in said deposit are concerned, it makes no difference whether the claim is presented by the depositor or by his successor by whatever title.

"Certain decisions have been cited to illustrate the application of this principle, to which we may briefly refer.

"Similar legislation as it relates to national banks was involved in *State* v. *First Nat. Bank of Portland,* 61 Or. 551, [Ann. Cas. 1914B, 153, 123 Pac. 712], and it was held by the supreme court of Oregon, 'that national banks are only exempted from state legislation to the extent that such legislation impairs their efficiency to perform the functions which they were designed to serve, and that the legislation here proposed does not have this effect.'

"In *First Nat. Bank* v. *Commonwealth,* 143 Ky. 816, Ann. Cas. 1912D, 378, 34 L. R. A. (N. S.) 54, 137 S. W. 518], the court of appeals of Kentucky held that 'where a national bank in the state held real estate, not necessary to its business, for more than five years, the property was subject to escheat under the state law; it appearing that it would not impair the efficiency of the bank.'

"In *National Bank* v. *Commonwealth,* 76 U. S. (9 Wall.) 353, [19 L. Ed. 701, see, also, Rose's U. S. Notes], a state law requiring a national bank to pay the tax which is rightfully laid on the shares of its stock was upheld, the court reiterating the doctrine that such instrumentalities are exempt from state legislation only to the extent that such legislation may impair or destroy the efficiency of these agencies of the federal government.

"In *Waite* v. *Dowley,* 94 U. S. 527, [24 L. Ed. 181, see, also, Rose's U. S. Notes], it was held that 'a state statute is not void, which, for the purposes of taxation, requires, under a penalty for his neglect or refusal, the cashier of each national bank within the state to transmit, on or before the fifteenth day of April in each year, to the clerks of the several towns in the state in which any stock or share holders of such bank shall reside, a true list of the names of such stock or share holders on the books of such bank, together with the amount of money actually paid in on each share on the first day of that month.'

"In *McClellan* v. *Chipman,* 164 U. S. 347, [41 L. Ed. 461, 17 Sup. Ct. Rep. 85, see, also, Rose's U. S. Notes], legislation by the state of Massachusetts invalidating preferences made by insolvent debtors and assignments or transfers made in contemplation of insolvency was held to apply to national banks, and not to be in conflict with any statute of the United States.

"In *Guthrie* v. *Harkness*, 199 U. S. 148, [50 L. Ed. 130, 26 Sup. Ct. Rep. 4, see, also, Rose's U S. Notes], it was held that a state court had the right by *mandamus* to enforce the right of a stockholder in a national bank to inspect the books of the corporation.

"Appellant seems to think that the *tontine* principle is involved in the disposition of the deposits made in a national bank; that is, upon the dissolution of the corporation the then depositors would receive the money of those absent and unknown. Our attention has been invited to no provision in the charter or by-laws of such banks or in any statute, state or federal, which gives countenance to this view. The National Bank Act (13 Stat. 99) provides that in case of the dissolution of a national bank the assets shall be used to pay the claims of the depositors, and the surplus, if any, shall be distributed to the shareholders, not to the depositors. No depositor has any interest in the deposit of another, except, of course, incidentally as he is interested in the prosperity of the bank.

"The interest of the shareholder in the deposit is not vested but contingent upon the event that it may not be claimed by the depositor or anyone representing him. The law in reference to the disposition of the assets of the national bank upon dissolution is not dissimilar to that applying to the state banks, but in neither case is there anything in derogation of the right of the depositor or his successor in interest to maintain his claim to the entire deposit. It is manifest that no depositor is required to leave his deposit in the bank indefinitely or until the dissolution of the bank. No such obligation is expressed or implied in any provision of the statute, as far as we know. Of course, the ability of a national bank to loan money depends upon the amount of its deposits, and it might be a great advantage to such corporation for the depositors to allow their money to be so used indefinitely, but the law does not require it, nor does it impose any such duty upon anyone succeeding to the interest of the depositor.

[2] "Of all the objections made by appellant we think only one possesses any merit. That relates to the peculiar language of the statute providing that the amount of money deposited shall escheat to the state. Appellant is undoubtedly right in the claim that deposits in national as well

as in state banks become the property of the bank, and thereby is created a debt in favor of the depositor to the amount of the deposit, and it is this debt which is paid in honor of the check of the depositor. *Smiths' Cash Store* v. *First Nat. Bank,* 149 Cal. 32, [5 L. R. A. (N. S.) 870, 84 Pac. 663]. It follows that the deposits mentioned in the complaint herein became a part of the actual assets and funds of the bank, and those identical funds could not, of course, escheat to the state by reason of any default of the depositor. Manifestly, the bank could not be deprived of its own funds in this summary manner without any default on its part. But while the language of the section is not very apt, it should be given a reasonable construction and one, if possible, that will sustain and not defeat the law. No doubt it was the intention of the legislature to provide that the right or claim of the depositor to such indebtedness should be forfeited or should 'escheat' to the state. It would be an impeachment of the common sense of the lawmakers to assume that they contemplated the forfeiture of the identical money that was deposited. It is not disputed that the language employed in said section is similar to that used generally in such statutes and involved in the decisions to which we have referred, and we think the reasonable interpretation is that the property affected by the escheat is the credit held by the depositor against the bank.

[3] "We do not agree with appellant in its construction of the term 'escheat' as used in said statute. It is said that 'an *escheat* can be taken over by the sovereignty only in cases where the property rights existed by reason of the sovereignty which claims the escheat, or where the property has been forfeited for violation of wrong committed against some valid law of that particular sovereignty,' and that the United States of America is that sovereignty. Hence, the contention that, if there could be an escheat of the depositor's interest, it must be in favor of the United States and not of the state. The mistake is in assuming that said property rights arise from and are governed by the federal statute. On the contrary, they are created and controlled by the state law, as the decisions abundantly show. In that respect the relation between a national bank and its depositor is placed upon the same footing as in the case of a state

186 Cal.—48

bank. The *sovereignty*, therefore, to which the *escheat* inures, is the state and not the United States.''

We deem it proper to repeat the statement at the conclusion of our decision in *State* v. *Security Sav. Bank, ante,* p. 419, 199 Pac. 791, that we express no opinion upon the question whether the judgment of the superior court herein operates as a present escheat of the rights of the several depositors against the respective banks, or whether under section 1272 they each still have the right within the time there stated to prosecute an action to obtain payment of their several deposits from the state treasurer, and to say that if they have such right the judgment of the superior court would not be a bar thereto.

The judgment appealed from in each of the said appeals is hereby affirmed.

Sloane, J., Wilbur, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., who was absent.