[Civ. No. 2676.   Third Appellate District.—February 29, 1924.]

STATE OF CALIFORNIA, Respondent, v. THE SAN FRANCISCO SAVINGS AND LOAN SOCIETY (a Corporation), Appellant.

[1] BANKS AND BANKING—CORPORATION BY-LAWS—RETROSPECTIVE OPERATION.—Where the language of a by-law of a corporation is such that, by giving it retrospective operation, it would have the effect of destroying or impairing an existing obligation or a substantive right, it will be held to be unreasonable or in defiance of existing laws.

[2] ID.—RELATION OF SAVINGS BANK AND DEPOSITOR—AGREEMENT TO PAY INTEREST.—Where moneys are deposited in the savings account of a savings bank existing and carrying on business as such under the provisions of the Civil Code, the transaction amounts to an agreement between the depositors and the bank whereby the former loaned the use of their moneys to the latter upon a consideration that, for such use, the bank will compensate the deposi-

tors either by the payment of a fixed rate of interest or such sums as the moneys so deposited and as invested by the bank may earn.

[3] ID.—CONSTRUCTION OF INTEREST AGREEMENT—RIGHT OF BANK TO DISCONTINUE INTEREST.—Where it is agreed between a savings bank existing and carrying on business as such under the provisions of the Civil Code and certain depositors when their accounts are opened that dividends, as declared, "will be appropriated and credited to the accounts of said depositors," such agreement means 'that so long as the accounts exist and remain in the bank, whether they become dormant or remain active or live accounts, the bank is obligated to credit such accounts with such dividends or interest as may be declared; and the bank may not, by the subsequent adoption of an amendment to its by-laws, discontinue the payment of interest after a certain time, although still holding and using the deposits.

[4] ID.—RIGHT TO AMEND BY-LAWS—NOTICE TO DEPOSITORS.—While a bank has the right to amend its by-laws, and, upon sufficient notice to its depositors, so to amend them as to reduce the rate of interest on deposits or to refuse to continue the deposits, and, where the by-laws of a bank at the time an account is opened therein by a depositor contain a provision authorizing their amendment, the bank may, under such authorization, and without notice to said depositor, amend the by-laws so as to bind said depositor, in so far as such amendment may affect only those general rules and regulations, common to all banking and other corporations, which relate to the general administrative policies thereof, such by-law provision authorizing an amendment thereof cannot give power to the bank to amend its by-laws so as to change materially the contract of the depositor without his knowledge.

[5] ID.—RULES GOVERNING DEPOSITS—WHEN AMENDMENTS EFFECTIVE. The rule that where a person opens a deposit account with a bank the depositor is to be thereafter governed and bound by the by-laws existing at the time the account is opened, and that all deposits made after the opening of the account are deemed to be made under the original contract, is subject to the qualification that if, upon notice to the depositor, the by-laws are so amended as to change materially the original contract, such deposits as are made subsequent to the amendment will be held to be made under the contract as so amended.

[6] ID.—INACTIVE ACCOUNTS—EFFECT ON CONTRACTS.—The contract between a savings bank existing and carrying on business as such under the provisions of the Civil Code and a depositor cannot be

---

4. Binding effect of by-laws of a savings bank upon the depositor, note, 105 Am. St. Rep. 732; 69 L. R. A. 324.

terminated or its validity vitiated by the fact that the account has been allowed to remain inactive for over twenty years.

[7] ID.—POSSIBILITY OF ESCHEAT—KNOWLEDGE OF BANK—INABILITY TO NOTIFY DEPOSITOR OF AMENDMENTS.—When such a savings bank accepts a deposit it does so with full knowledge of the fact that one of the contingent incidents of such transaction is that the account might become dormant and remain unclaimed for a sufficient period of time to justify the state, under our statutes of escheat, to institute suit for the transfer of the moneys therein into the treasury of the state; and such bank is not relieved from the necessity of giving notice of the adoption of a by-law amendment materially changing the contract of the depositor by the fact that the whereabouts of the depositor is unknown.

---

(1) 14 C. J., p. 368, sec. 469.    (2) 7 C. J., pp. 863, 873, secs. 906, 925 (1926 Anno.).    (3) 7 C. J., p. 873, sec. 925 (1926 Anno.).    (4) 7 C. J., pp. 864, 865, sec. 907.    (5) 7 C. J., pp. 864, 865, sec. 907 (1926 Anno.).    (6) 7 C. J., p. 873, sec. 925 (1926 Anno.).    (7) 7 C, J., p. 864, sec. 907.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goodfellow, Eells, Moore & Orrick for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

HART, J.—The attorney-general of the state of California instituted this action in behalf of the state in pursuance of the provisions of section 1273 of the Code of Civil Procedure, as the same was amended by the legislature of 1915 (Stats. 1915, p. 107), to have 170 different savings deposits in the defendant bank declared escheated to the state.

The notice required by the section named of the commencement of the action was duly given to the defendants and the notice to claimants, required to be given by the county clerk by the Bank Act, as amended by the legislature of 1915 (Stats. 1915, p. 1106), was also given as so prescribed. The state was awarded judgment declaring each of the deposits as escheated to it, and from said judgment and particularly so much thereof as awards interest on each of the accounts from the date of the adoption of a certain amendment to the by-laws of the appellant (to be hereinafter

considered) to the time of the rendition of judgment the defendant bank appeals. The case is brought here on the judgment-roll alone.

Section 1273 of the Code of Civil Procedure provides, among other things, that, where a deposit of money in a bank made by a depositor has, for a period exceeding twenty years, remained in such bank without being added to or drawn on in any amount, and the depositor has failed to claim the same, and neither the depositor nor any other claimant has filed with the bank any notice of his or her present residence, such deposit, with the accrued interest, shall escheat to the state.

Among the findings are the following:

"That it was agreed between the defendant bank and the defendant depositors when their said accounts were opened that dividends, as declared, would be appropriated and credited to the accounts of the said depositors, and it was further agreed between the defendant depositors and the defendant bank that the defendant depositors would be governed by the by-laws of the bank; that the by-laws of the defendant bank at all times provided that they could be amended;

"That on January 26, 1917, the defendant bank added to its by-laws, in the manner prescribed by law for the amendment of its by-laws, a new provision, to-wit: 'If for ten years no money has been deposited on an account nor withdrawn therefrom, no interest shall be allowed on such account after ten years have elapsed since the last deposit or withdrawal was made.' "

At the trial the defendant bank opposed the action on the ground that the escheat statutes of this state were unconstitutional and void. Since the trial of this action, however, both the supreme court of the state of California and the supreme court of the United States have directly passed upon and decided that our legislation with respect to escheats is not invalid for any of the reasons urged here or for any reason at all. (See *State* v. *Security Savings Bank,* 186 Cal. 419 [199 Pac. 791]; *State* v. *Anglo-London, Paris Nat. Bank,* 186 Cal. 746 [200 Pac. 612]; *Security Savings Bank* v. *State of California,* 263 U. S. 282 [68 L. Ed. 301, 44 Sup. Ct. Rep. 109].) Counsel for the appellant, notwithstanding those decisions, still cling to the position

that the escheat statutes of this state sanction the taking of property without due process of law and also deny to the appellant ''and certain other citizens and persons within the jurisdiction of said state the equal protection of the laws,'' and insist that the conclusions reached in the cases cited are erroneous. The cases mentioned set at rest all question as to the constitutionality of our escheat statutes and it follows that the question of their validity is not now open to further consideration, at least so far as this court is concerned. Indeed, counsel for the appellant do not themselves appear to be serious in pressing the point here. The discussion in their briefs is addressed mainly to the question as to the meaning and the effect of the above-quoted amendment made by the appellant to its by-laws upon the obligation of appellant to pay interest on the savings deposits for the whole period of dormancy on said deposit accounts and to the date that the same were judicially declared escheated to the state.

The amendment in question was, it will be noted, adopted or passed by the board of directors of the appellant on the twenty-sixth day of January, 1917, and as to this the general proposition of the appellant is that, after the date of the adoption of the said amendment, the deposit accounts in suit were not, by virtue of the terms of the amendment, to draw or to be credited with interest.

All the deposit accounts concerned in this action had been dormant or inactive for a period far in excess of twenty years prior to the date of the commencement of this action, on the thirtieth day of July, 1917. It is, in fact, expressly admitted by counsel for the appellant that the amendment in question was adopted long after the accounts herein involved became subject to transfer to the state treasury under the escheat laws.

Much of the controversy in the briefs revolves around the proposition as to whether the amendment in question was or is, as to the accounts in suit, retroactive or prospective in its operation. [1] This controversy arises upon the facts disclosed here by the findings considered in the light of the well-settled rule that where the language of a by-law of a corporation is such that, by giving it retrospective operation, it would have the effect of destroying or impairing an existing obligation or a substantive right, it

will be held to be unreasonable or in defiance of existing laws.   (See 6 Cal. Jur., p. 717.)

The appellant contends that the amendment is prospective in that it applies, not to the accounts as they existed prior to the date of the passage of the amendment, but to the accounts as they existed from and subsequent to said date. The state maintains that the amendment is susceptible only to the construction that it is not to have operative effect until the lapse of ten years from the date of its adoption.

We do not agree with the attorney-general's construction of the amendment. For its purposes, the amendment divides the dormancy of the accounts into two different periods of time of ten years each, and, paraphrased in simple language, plainly means this: That interest will be allowed on the accounts for each of the ten years of their dormancy, but, from and after the expiration of such ten years of inactivity, interest will not be allowed thereon. If the amendment were valid or enforceable according to its plainly expressed terms, the fact that the bank does not claim or pretend to be authorized by virtue thereof to exercise the right to disallow interest for any period prior to the adoption of the amendment would not, it is obvious, change or alter the retrospective effect of the amendment. The appellant evidently recognized the construction which we ascribe to the amendment in undertaking to exercise what it conceived to be its right under the amendment by confining the exercise of such right to a period beginning with and subsequent to the date of the adoption of the amendment, claiming, as we have shown, that, since the right to disallow interest on the account is so limited or confined, the amendment is made to operate in the future or prospectively.

But, in our opinion, even as construed by the appellant, the amendment, in its terms, is still retrospective in its operation, for it would, in such case, as it would in any view of it, not only operate upon agreements made prior to its adoption, but would by such operation so affect said agreements as to destroy one of the vital rights established thereby when made. Thus we are brought to the consideration of the pivotal point of this appeal, to wit, whether a savings bank, subsequent to its acceptance of savings

deposits, upon an agreement to pay the depositors the interest or dividends thereon, may, after such accounts have remained dormant or inactive for a number of years or, as in this case, after the statutory time has run when the state may proceed to have the same transferred to the state treasury, and without the consent of the depositors, so change its by-laws as to authorize it to disallow interest on such accounts from the date of such change. It is, of course, the contention of the appellant that this may be done. The real basic proposition of the argument in support of that position is that, as the court found, the by-laws of the appellant, at the time the deposits in suit were made contained a provision that "the by-laws of the defendant bank at all times provided that they could be amended"; that when the deposits were made it was agreed by and between the defendant depositors and the defendant bank that the former would be governed by the laws of the latter; that, therefore, the by-laws as so providing at the time the deposits were made, essentially became a part of and entered as an element into the agreement whereby the deposits were made by the depositors and accepted by the bank, and that the depositors thus agreed that an amendment of the by-laws might be made at any time by the bank without actual notice of the amendment or the intention to make it to the depositors. We cannot assent to this proposition in its entirety.

The appellant is a savings bank, and, ever since October, 1885, has existed and carried on business as such under the provisions of the Civil Code of the state of California of 1872 and amendments thereto. (Civ. Code, secs. 571–583b.) Under the provisions of the Civil Code under which it was organized and is operating, it has a capital stock and the depositors, unlike the original conception of savings banks where the depositors shared proportionally in profits and losses, and where the managers of the funds were but the trustees and agents of the members, when making and maintaining deposits therein, sustain the relation of creditors to the bank. In other words, the legal relation created between said bank and its depositors is, as to the deposits made by the latter, that of debtor and creditor. **[2]** Where moneys are deposited in the savings account of a savings

bank so organized the transaction amounts to an agreement between the depositors and the bank, whereby the former loaned the use of their moneys to the latter upon a consideration that, for such use, the bank will compensate the depositors either by the payment of a fixed rate of interest or such sums as the moneys so deposited and as invested by the bank may earn. These payments are sometimes called interest and sometimes dividends, although the latter term is more applicable to those savings banks where the depositors share proportionally in the earnings of the bank. [3] As seen, the court in this case found that "it was agreed between the defendant bank and the defendant depositors when their said accounts were opened that dividends, as declared, would be appropriated and credited to the accounts of the said depositors." We are at a loss to understand how the bank can avoid the effect of that agreement. There is nothing in the agreement as found which provides that "the dividends, as declared, would be appropriated and credited to the accounts" for a limited period only. Nor is there any language in the agreement itself which gives, or may be so construed as giving, the bank authority to limit the period during which interest may be allowed on the accounts, while they are still maintained, to a specified time, or, in other words, that, after a certain time, the bank may discontinue the payment of interest, although still holding and using the deposits. The agreement, it seems perfectly clear, can mean but one thing, so far as the rights of the depositors are concerned, to wit: That so long as the accounts exist and remain in the bank, whether they become dormant or remain active or live accounts, the bank is obligated to credit such accounts with such dividends or interest as may be declared. There is but one contingency which can happen under the agreement, as found by the court, which could operate to exempt the appellant from the performance of the obligation of allowing interest or dividends on the accounts for the whole period of their existence as assets of the bank and that would arise when, perchance, the deposits had earned no interest or the bank had accumulated no dividends which could be declared.

[4] The right of a bank to amend its by-laws, and, upon sufficient notice to its depositors, so to amend them as to reduce the rate of interest on deposits or to refuse to con-

tinue the deposits cannot be questioned. Nor will it be
doubted that, by dealing with the bank, every depositor
adopts its regulations which are in existence at the time,
and it may be conceded to be true that where, as here,
the by-laws of a bank at the time an account is opened
therein by a depositor contain a provision authorizing their
amendment the bank may, under such authorization, and
without notice to such depositor, amend the by-laws so as
to bind the latter, in so far as such amendment may affect
only those general rules and regulations, common to all
banking and other corporations, which relate to the general
administrative policies thereof. But "the fact that a by-law
of which a depositor has notice authorizes the amendment
of the by-law does not operate to change the depositor's
contract where a material amendment to the by-law is made
without notice to him, and without his consent." (3 R. C. L.
sec. 339.) In other words, a provision in such by-laws au-
thorizing an amendment thereof cannot give power to the
bank to amend the by-laws so as to change materially the
contract of the depositor without his knowledge. (2 Morse
on Banks and Banking, 4th ed., p. 620, and cases therein
cited.) And this proposition holds good even in the face
of the established rule that the by-laws of a bank existing
at the time an account is opened therein enter into and
become a part of the contract whereby the deposit is made
by the depositor and accepted by the bank. [5] The rule
seems to be uniform that where a person opens a deposit
account with a bank the depositor is to be thereafter gov-
erned and bound by the by-laws existing at the time the ac-
count is opened, and that all deposits made after the open-
ing of the account are deemed to be made under the original
contract. Of course, the latter rule is subject to this qualifi-
cation: That if, upon notice to the depositor, the by-laws
are so amended as to change materially the original contract,
such deposits as are made subsequent to the amendment will
be held to be made under the contract as so changed.

The argument is made that the appellant had the right
to assume that the defendant depositors, having failed to
claim their deposits and allowed them to remain inactive
for over twenty years, had abandoned their accounts as
well as waived their rights under the contracts with the
bank, including their right to notice of the amendment,

"if any existed"; that the appellant had no knowledge of the whereabouts of the defendant depositors, and, therefore, it could not only not give notice, but, upon the assumption that they had abandoned their contracts, it was not necessary to give notice; that the appellant is authorized to presume that said depositors were dead; that "the situation would be inequitable, for the bank would have to keep deposits, regardless of its desire, when not required by law or contract to do so, and still have to credit interest"; that by the passage of the amendment "the bank could be deemed to have canceled the contract." Without attempting to reply to the points in the order in which thus they are stated, we make these general observations as a complete answer thereto: A savings bank, such as is the appellant, does the bulk of its business on borrowed capital—that is, on the moneys deposited therein by the depositors. Its business is, therefore, to seek such deposits. Indeed, without such deposits it could not survive as a savings bank. And certainly it could not be said to be inequitable, assuming that such a consideration could influence the determination of this appeal, if, as may well be assumed to be true, the bank has used the moneys in the accounts involved herein. [6] As to the suggestion that the failure of the depositors to claim their accounts or to allow them to remain inactive for over twenty years is to be deemed an abandonment thereof, as well as a waiver of their rights under their contract with the bank, the ready reply is that such contracts cannot be terminated or their validity vitiated in any such way. The policy of the state is that there shall be an ownership of all property in someone. If the depositors are dead and they died intestate, the contract, with all its rights, vests in their heirs; or if they have died testate and have thus disposed of their accounts, either specifically or in general language, then the accounts belong to those named in the will as such beneficiaries. If there be neither heirs nor a will, then, under the law, the property must, after the prescribed time during which they have remained dormant, be transferred to the state treasury under the provisions of our escheat laws. [7] The claim that there is no necessity for giving notice to the depositors of the adoption of the amendment in question because their where-

abouts are unknown, making it impossible to give such notice, is not only answered hereinabove, but by the further consideration that when the bank accepted the deposits it did so with full knowledge of the fact that one of the contingent incidents of such a transaction was that the accounts might become dormant and remain unclaimed for a sufficient period of time to justify the state, under our statutes of escheat, to institute suit for the transfer of the moneys therein into the treasury of the state.

We do not intend to review in detail herein the cases cited by the appellant as supporting its position. None of them is directly in point and, indeed, we have not been able to find any case precisely like the one here. All the cases cited by the appellant involve amendments to the by-laws of mutual benefit or fraternal societies which pay sick and other benefits to its members. The amendments dealt with in those cases changed the amount of benefits to be paid, or limited the period during which those members coming within the terms of the sick benefit provisions should receive weekly or monthly benefit payments. The cases so cited are not unlike in principle those cases dealing with savings banks in which the depositors themselves are the bank and the trustees and officers of the bank are the agents of the depositors. In such case the relation of debtor and creditor is not created between banks so organized and conducted and the depositors, who are themselves the owners of the banks. The directors and officers of such banks are the agents or trustees of the depositors, and when a regulation is made by such agents it is the act of the depositors themselves. The same situation exists as to the mutual benefit societies or fraternal organizations awarding sick or death benefits to the members. The relation of debtor and creditor does not exist between such society itself and its members, for the reason that the members themselves constitute the society and the officers thereof are the agents or trustees of the members. When, therefore, such officers or agents or trustees adopt a by-law or regulation within the scope of the powers of the society and their official authority, the adoption of such by-law or regulation involves the act of the members themselves, whose consent thereto is necessarily of the essence of the act. The distinction between a savings bank whose deposi-

tors share proportionally the profits thereof and who really are the owners of the bank and a savings bank having a capital stock and of which the shareholders and not the depositors are the owners is clearly pointed out in the case of *Ackenhusen* v. *People's Savings Bank,* 110 Mich. 175 [64 Am. St. Rep. 338, 33 L. R. A. 408, 68 N. W. 118], a case approved by our supreme court in *Los Angeles Investment Co.* v. *Home Savings Bank of Los Angeles,* 180 Cal. 601, 614 [5 A. L. R. 1193, 182 Pac. 293].

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.